**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Freddie B. WILLIAMS, Defendant-Appellant.**

**No. 85–1448.**

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 18, 1985.[*]

Decided April 9, 1986.

---

* On July 3, 1985, defendant-appellant filed a Motion for Waiver of Oral Argument. Upon receipt of the government's response to that motion, this court granted defendant-appellant's motion and the appeal was submitted on the briefs and record.

Roger B. Keesee, Potter, Gillman, Galvin, Konecky & Keesee, Rock Island, Ill., for defendant-appellant.

Michael J. O'Leary, Asst. U.S. Atty., and Gerald D. Fines, U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before ESCHBACH and RIPPLE, Circuit Judges, and PELL, Senior Circuit Judge.**

** On September 18, 1985, when this case was originally submitted to the court, Judge Pell, a senior circuit judge, participated in the consid-

PER CURIAM.

Freddie B. Williams appeals from a district court order revoking his probation. We affirm.

On January 25, 1977, Williams pled guilty to five counts of possessing stolen mail and forging government checks in violation of 18 U.S.C. §§ 495 and 1708. Williams was sentenced to three years incarceration on Counts I, II and III, to be served concurrently with a state sentence he was then serving. On Counts IV and V, Williams was sentenced to a three-year probation term. On October 27, 1979, Williams began federal probation supervision.

In March 1982, while Williams was still on federal probation, state authorities arrested him for a residential burglary in Galesburg, Illinois; Williams was subsequently convicted of burglary. On July 22, 1982, the United States Probation Office filed a Petition for Revocation of Probation, citing the burglary conviction as the primary basis for revocation. The district court issued a warrant for Williams' arrest on July 26, 1982; federal authorities lodged the warrant as a detainer with the Illinois Department of Corrections.

On May 31, 1983, the Illinois Appellate Court reversed Williams' burglary conviction and remanded the case for a new trial. On August 11, 1983, Williams filed a Motion for Speedy Trial on his federal probation violation; the district court denied the motion on December 8, 1983. Over a year later, on December 18, 1984, Williams returned to Galesburg and pled guilty to an amended charge of burglary in exchange for credit for time served in state custody. State authorities then released Williams to federal custody.

The district court held Williams' probation revocation hearing in January 1985. Williams stipulated to the violations and the court ordered his probation revoked. On March 6, 1985, the district court, with expressed reluctance, reinstated his probation and extended it until October 12, 1987.

eration of this case. He did not participate in this decision after December 31, 1985.

On the recommendation of probation authorities, the court imposed a probation condition that required Williams to submit to drug screening and urinalysis at the direction of probation authorities.[1] Williams appeals. He argues first that the delay of his probation prosecution violated his Sixth Amendment right to a speedy trial. He further maintains that the mandatory urinalysis requirement offends the Fourth Amendment's proscription against unreasonable search and seizure.

We reject Williams' argument that federal authorities' delay in prosecuting his probation warrant violated the Sixth Amendment. In *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Supreme Court rejected similar argument by a federal parolee who had been subsequently convicted of another federal offense. The Court reasoned that the defendant's liberty loss was occasioned not by the delay of the parole proceeding, but rather resulted solely from his imprisonment for the later conviction. Absent some showing that delay of the parole procedures actually caused the defendant some particular prejudice, the Supreme Court held the Constitution did not require immediate hearing. *Id.* at 86–89, 97 S.Ct. at 278–79. *See also Doyle v. Elsea*, 658 F.2d 512 (7th Cir.1981); *Head v. United States Board of Parole*, 553 F.2d 22, 23 (7th Cir.), cert. denied, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977).

 Williams makes no showing that the delay of his hearing so prejudiced him as to require a prompt probation determination. It is irrelevant that Williams' subsequent crime was a state, not a federal, offense; had it deemed proper, the district court could have directed that Williams' federal sentence be served retroactively concurrent with his state sentence. 18 U.S.C. § 3653. *See Moody*, 429 U.S. at 88, 97 S.Ct. at 279; *United States v. Johnson*, 563 F.2d 362, 364 (8th Cir.1977). The delay did not and could not have hampered Williams' ability to intelligently assess whether to accept the state's plea offer. Williams' purported doubt as to whether probation authorities would pursue him once convicted of the burglary charge simply was not reasonable.[2] Finally, Williams was not entitled to an immediate hearing simply because the delay caused him "anguish." Some degree of anguish is an inevitable result of criminal prosecution and does not alone offend the Constitution.[3] *See Reddin v. Israel*, 561 F.2d 715, 718 (7th Cir. 1977).[4]

1. The updated presentence report stated that urinalysis revealed traces of marijuana in Williams' system. The presentence examiner therefore recommended continued drug and alcohol screening.

2. *See Moody*, 429 U.S. at 89, 97 S.Ct. at 279. There, the Supreme Court commented that delay of the violation proceeding may actually benefit the violator in some cases. The Court reasoned that when an individual is convicted of an offense that is a plain violation of his parole, revocation is often foreordained. The later the hearing date, the greater the information authorities will have to consider in assessing his case, *e.g.*, his subsequent institutional record. If the hearing were immediately held, authorities would only be able to consider information relating to his violation offense.

3. Williams' claim that state authorities denied him access to certain rehabilitative prison programs and refused to transfer him to a minimum security facility because of the outstanding federal detainer is meritless. It is well-settled that these deprivations do not implicate any constitutionally-protected liberty interest. *Moody*, 429 U.S. at 87–89, 97 S.Ct. at 278–79. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (transfer of inmates from minimum to maximum security facility did not implicate a liberty interest within the meaning of the due process clause); *Garza v. Miller*, 688 F.2d 480 (7th Cir.1982), *cert. denied*, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983) (no cognizable due process interest in prison employment, increased recreation or educational courses). *See also Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

4. We also reject Williams' argument that the district court lacked jurisdiction to revoke his probation because the petition for revocation was not heard within the three-year period of his original probation. The warrant for Williams' arrest was issued well within his term of probation and, accordingly, the district court had jurisdiction to hear the warrant. *United States v. Bazzano*, 712 F.2d 826, 829 (3rd Cir. 1983), *cert. denied*, 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984); *United States v. Johnson*,

Williams' constitutional challenge to the drug screening condition also fails. Assuming, without deciding,[5] that the taking of a urine sample entails a search or seizure, we hold that the condition imposed here is reasonable and, accordingly, passes muster under the Fourth Amendment.

The scope of our review of a probation condition is extremely limited. Probation is, first and foremost, a penal alternative to incarceration—its objectives are to foster the offender's reformation and to preserve the public's safety. For that reason, a sentencing court is afforded broad discretion to fashion those conditions of probation it deems necessary to ensure the individual successfully completes his term of probation. *United States v. Alexander,* 743 F.2d 472, 479–80 (7th Cir.1984); *United States v. McDonough,* 603 F.2d 19, 24 (7th Cir.1979). When necessary, the sentencing court has discretion to impose conditions that impinge on otherwise inviolable rights.[6] In determining whether a probation condition unduly intrudes on a constitutionally-protected freedom, a reviewing court evaluates the condition in the following context:

> The conditions must be "reasonably related" to the purposes of the [Probation] Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement.

*United States v. Pierce,* 561 F.2d 735, 739 (9th Cir.1977), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978). *See also United States v. Tonry,* 605 F.2d 144, 149–50 (5th Cir.1979); *United States v. Consuelo-Gonzalez,* 521 F.2d 259, 264–65 & n. 14 (9th Cir.1975).

The district court plainly acted within the bounds of its discretion by requiring Williams to submit to drug-screening. Williams told probation authorities in the course of his presentence investigation that he was not a drug abuser. Yet, confronted

563 F.2d 362, 363 n. 1 (8th Cir.1977). *See* 18 U.S.C. § 3653.

5. *See McDonnell v. Hunter,* 746 F.2d 785 (8th Cir.1984) (affirming grant of preliminary injunction prohibiting department of corrections from conducting strip searches, blood tests and urinalyses of employees in the absence of reasonable suspicion the particular employee is either smuggling contraband or under its influence); *Division 241 Amalgamated Transit Union v. Suscy,* 538 F.2d 1264 (7th Cir.), *cert. denied,* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976) (taking of blood and urine samples together implicates Fourth Amendment concerns); *Shoemaker v. Handel,* 619 F.Supp. 1089, 1098 (D.N.J.1985) (urinalysis implicates Fourth Amendment concerns); *Tucker v. Dickey,* 613 F.Supp. 1124, 1129–30 (W.D.Wis.1985) (same); *Allen v. City of Marietta,* 601 F.Supp. 482 (N.D. Ga.1985) (same); *Storms v. Coughlin,* 600 F.Supp. 1214, 1218–20 (S.D.N.Y.1984) (same); *State v. Jensen,* 373 N.W.2d 902 (N.D.1985) (same); *Macias v. State,* 649 S.W.2d 150, 152 (Tex.App.1983) (same); *Roman v. State,* 570 P.2d 1235, 1243 (Alaska 1977) (implicitly assuming urinalysis is a search); *People v. Richards,* 76 Mich.App. 695, 256 N.W.2d 793 (Mich.App. 1977) (same); *State v. Robledo,* 116 Ariz. 346, 569 P.2d 288 (Ariz.App.1977) (declines to pass on issue of whether urinalysis is a search). *Compare Winston v. Lee,* — U.S. —, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (bullet removal);

*Hayes v. Florida,* — U.S. —, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985) (seizure of person for fingerprints); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (fingerprints); *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (fingernail scrapings); *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (voice exemplar); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood sample); *United States v. Anderson,* 739 F.2d 1254 (7th Cir.1984) (hair sample); *United States v. Sechrist,* 640 F.2d 81 (7th Cir.1981) (fingerprints).

6. *See, e.g., United States v. Alexander,* 743 F.2d 472 (7th Cir.1984) (probationer prohibited from owning a particular type of business); *United States v. Tonry,* 605 F.2d 144 (5th Cir.1979) (probationer prohibited from running for political office or engaging in political activity); *United States v. Kohlberg,* 472 F.2d 1189 (9th Cir. 1973) (probationer required to surrender pornographic material, to terminate interest in illegal pornographic company and to not associate with any known homosexuals); *Birzon v. King,* 469 F.2d 1241 (2nd Cir.1972) (probationer prohibited from associating with persons engaged in criminal activity). *See generally* Comment, *Judicial Review of Probation Conditions,* 67 J.Colum.L.Rev. 181 (1967).

with the results of his urinalysis profile,[7] he admitted that he used marijuana but said that he did not consider marijuana a drug. Given Williams' status as a repeat offender and his lengthy and substantial criminal record, authorities understandably did not view even his casual use of marijuana lightly.[8]

The district court's obvious purpose in requiring Williams to submit to drug screening was to limit his involvement with illegal drugs. Drug screening is a simple mechanism whereby authorities can monitor his conduct and enforce the terms of his probation. Importantly, the condition is not overly broad or unduly vague. *Consuelo-Gonzalez*, 521 F.2d at 263. Williams need only submit to tests given by or at the reasonable direction of his probation officer. He is not required to submit to urinalysis under unreasonable or arbitrary circumstances or for any purposes unrelated to his own conviction or rehabilitation. *Id.* at 266–67. Viewed from this standpoint,[9] the drug screening condition, quite clearly bears a reasonable relationship to the purposes of the Probation Act and the needs of this probationer.

AFFIRMED.

---

7. In his brief, Williams baldly asserts that the initial urinalysis screening was unconstitutional. Williams failed to raise this claim below and accordingly may not assert it for the first time on appeal. *Christmas v. Sanders,* 759 F.2d 1284, 1291 (7th Cir.1985). Indeed, absent further discussion or such additional factual detail as might have been developed below, the claim is unreviewable. Accordingly, we presume the initial urinalysis was reasonable.

8. Under the circumstances of this case, the fact that Williams' underlying offense was not drug-related is irrelevant. Having recognized the correlation between drug use and criminal misconduct, Congress has, in fact, specifically afforded the district courts statutory authority to require any probationer "with a drug abuse or other drug dependence problem ..." to submit to drug abuse treatment "until discharged ... as cured." 42 U.S.C. § 259(e).

9. Our conclusion that urine testing is reasonable here is predicated, quite obviously, on the fact that Williams is a probationer, not an ordinary citizen. We express no opinion as to the reasonableness of urine testing in any other context.