# STATE OF CONNECTICUT *v.* KEVIN M. BOYLE
## (AC 28157)

Bishop, McLachlan and Lavine, Js.

Argued April 17—officially released July 17, 2007

*Martin Zeldis*, public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Louis J. Luba, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Kevin M. Boyle, appeals from the modification of the conditions of his probation resulting in the imposition of a special condition that he claims is unrelated to the offense for which he is serving probation. Because there is no nexus between the modified condition and the charge for which the defendant is serving probation, we reverse the judgment of the trial court.

The following factual and procedural history is relevant to the consideration of the defendant's appeal. On August 24, 2005, the defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a and failure to drive in the proper lane in violation of General Statutes § 14-236. The defendant entered into a plea agreement and pleaded guilty to the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs. On April 5, 2006, pursuant to the plea agreement, the court sentenced the defendant to six months incarceration, execution suspended after thirty days, with eighteen months probation. The court also imposed conditions

of probation that the defendant (1) participate in substance abuse evaluation, as well as testing, treatment or both, (2) participate in a victim impact panel, (3) not operate a motor vehicle without a valid driver's license, registration or insurance and (4) participate in 150 hours of community service to be completed within the first fifteen months of his probation period.

The defendant was released from incarceration and began serving probation on May 4, 2006. On July 28, 2006, the office of adult probation filed a motion seeking modification of the conditions of the defendant's release. Specifically, the probation officer assigned to the case requested that the defendant be required to review, sign and abide by all sexual offender conditions of probation to include sexual offender evaluation and any recommended treatment, polygraph examinations and Abel screens, which are specialized tests to determine a person's sexual interest in children, as deemed necessary by the office of adult probation. The request was based on the probation officer's discovery that the defendant had a 1997 conviction of sexual assault in the fourth degree stemming from an incident that occurred in 1995, that the defendant was listed on the state's sex offender registry and that a parole board evaluation conducted in 2001 rated the defendant's recidivism-sexual offense relapse risk as high and his dangerousness-severity of risk as severe.

At the hearing on the request to modify the conditions of probation and to impose the sexual offender condition, the probation officer testified that his basis for making the request was the policy of the office of adult probation to do so out of an abundance of caution where the probationer had a prior sexual offense conviction and was still on the sex offender registry. The probation officer referred to no behavior on the part of the defendant during his probation that gave rise to this requested modification. The probation officer

testified, however, that because the use of alcohol was a factor in the defendant's past crimes, he believed it was necessary to make the recommendation in case the defendant started drinking again. In response to the court's inquiry as to how the condition of sexual offender evaluation was reasonably related to the defendant's current rehabilitation, the probation officer stated that he did not believe that it was "so much related to his rehabilitation as much as it [was] to his supervision and the safety to the community as a probation department." The probation officer acknowledged that the defendant's conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs had no sexual component, that he had no present indication that the defendant was using or abusing alcohol and that the defendant was enrolled in a substance abuse program in accordance with the terms of his probation.

In response, the defendant argued that if specific problems with alcohol arose in the future, the conditions imposed at sentencing relating to alcohol use were sufficient to address any such issue. The defendant further argued that the conditions regarding sexual offender treatment were completely unrelated to the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs for which he is currently on probation. Additionally, the defendant contended that there was nothing to indicate any probability that he would commit a sexual offense while on probation, especially because it had been more than ten years since he had been convicted of the sexual assault charge and at least five years since he had been under supervision by the department of correction or office of adult probation.

On August 7, 2006, the court granted the motion for modification and imposed a condition of probation requiring the defendant to review, sign and abide by

all sexual offender conditions of probation, including sexual offender evaluation and any recommended treatment, polygraph examination and Abel screens as deemed necessary. In its memorandum of decision, the court stated that *State* v. *Pieger*, 240 Conn. 639, 692 A.2d 1273 (1997), required the condition of probation to be reasonably related to the purposes of probation. Quoting broad language from *Pieger*, the court determined that any condition could be imposed if it would help serve the defendant's reformation. The court noted that the probation officer testified that alcohol was a common denominator in the defendant's criminal history and, in particular, that it "fueled the conduct which resulted in his sexual assault conviction." The court concluded that the sexual offender condition was "reasonably necessary to rehabilitate the defendant and reasonably necessary to protect prospective victims." This appeal followed.

On appeal, the defendant contends that the additional condition requiring him to participate in sexual offender evaluation, treatment or both is improper because it is not related to his rehabilitation for the crime to which he pleaded guilty and for which he is currently serving probation. We agree.

In order to determine whether the legislature intended to allow the imposition of such a condition of probation, we begin with the familiar principles of statutory construction. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining

such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Pasquariello* v. *Stop & Shop Cos.*, 281 Conn. 656, 663–64, 916 A.2d 803 (2007). We first look to the language of the statute and to the general goals of probation in order to discern the intent of the legislature in enacting subdivision (17) of General Statutes § 53a-30 (a).

General Statutes § 53a-30 (a) provides in relevant part that "[w]hen imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant . . . (17) satisfy any other conditions reasonably related to the defendant's rehabilitation. . . ." The comment of the commission to revise the criminal statutes, which first proposed adoption by the legislature of our present criminal code more than thirty years ago, provides in relevant part as to § 53a-30: "This section sets out, as a kind of guideline, the general conditions that the court may impose on the sentence of probation . . . . The list is not intended to be exhaustive." Commission to Revise the Criminal Statutes, Penal Code comments, Connecticut General Statutes Annotated (West 2001) § 53a-30, commission comment. Thus, pursuant to § 53a-30 (a), a sentencing court may impose a variety of conditions to a sentence of probation that are aimed at rehabilitating the defendant.

In viewing the general goals of probation together with the broad language of the statute, we conclude that the trial court has the broad authority and flexibility to impose conditions to reach the desired ends of rehabilitating the probationer. Thus, for example, the court has the authority to impose sexual offender treatment as a special condition of probation. See *State* v. *Cyr*, 57 Conn. App. 743, 746–48, 751 A.2d 420, cert. denied, 254 Conn. 905, 755 A.2d 883 (2000). The court's authority, however, is not unbridled. In the exercise of its discretion, the court's imposition of a condition must reasonably relate to the purposes of probation.

"Probation conditions serve two primary purposes. [They] are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. . . . Because probation is part of a criminal sentence, probation conditions often restrict the liberty rights of a probationer by imposing serious restraints on a probationer's life-style, associations, movements and activities. . . . Nevertheless, a condition of probation may diminish a probationer's liberty rights only to the extent necessary for his reformation and rehabilitation." (Citations omitted; internal quotation marks omitted.) *State* v. *Graham*, 33 Conn. App. 432, 448, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

"When sentencing a defendant to probation, a trial court has broad discretion to impose conditions. . . . Nevertheless, this discretion is not unlimited, as statutory and constitutional constraints must be observed. . . . General Statutes § 53a-30 enumerates the conditions that the trial court may impose on a defendant." (Citations omitted.) *State* v. *Graham*, supra, 33 Conn. App. 447. Although the list of conditions set forth in § 53a-30 was meant to be illustrative, and not exhaustive, the gamut of potential conditions of probation to be imposed on a defendant is not unbounded. "On

appeal, we review whether the trial court abused its statutory discretion in imposing a condition of probation." Id.

"[I]n determining whether a condition of probation [is proper] a reviewing court should evaluate the condition imposed under our Adult Probation Act in the following context: The conditions must be reasonably related to the purposes of the [Probation] Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement." (Internal quotation marks omitted.) *State* v. *Thorp*, 57 Conn. App. 112, 116–17, 747 A.2d 537, cert. denied, 253 Conn. 913, 754 A.2d 162 (2000). In the present case, our focus is on the first factor, the purposes sought to be served by probation.

Here, the court relied primarily on *State* v. *Pieger*, supra, 240 Conn. 639, and *State* v. *Cyr*, supra, 57 Conn. App. 743, to support its conclusion that the condition of sexual offender evaluation was appropriate. On closer examination, however, neither *Pieger* nor *Cyr* supports the trial court's conclusion. In *Pieger*, the defendant was convicted of evading responsibility in connection with an accident in which he struck a pedestrian with his vehicle. The trial court required, as a condition of probation, that the defendant donate $2500 to the hospital in which the victim was being treated for severe injuries. On appeal, our Supreme Court affirmed the imposition of the condition because it was reasonably related to the defendant's rehabilitation, as it forced him to confront the harm his actions caused. *State* v. *Pieger*, supra, 650. Moreover, the court stated that "requiring the defendant to make a donation to the hospital . . . was more rehabilitative than requiring the defendant to pay a fine because the donation had

*a direct relationship to the accident and the injuries,* thereby advancing *the rehabilitative purpose of making the defendant accept his responsibility* for the accident." (Emphasis added.) Id. The court concluded that "as long as the condition requiring monetary payment shares a nexus with the defendant's crime, as in this case, it is reasonably related to rehabilitation." Id., 651. The court further noted: "In the present case, the nexus shared by the defendant's crime and the imposed condition of making a donation is clear—the donation is to be made to the hospital where the victim of the crime was treated. In future cases, however, express findings supporting the requisite nexus would alleviate any concerns on the part of a reviewing court." Id., 651 n.5.

In *Cyr,* the defendant was convicted of risk of injury to a child and prostitution. *State* v. *Cyr,* supra, 57 Conn. App. 745. The trial court imposed a condition of sexual offender treatment. The defendant failed to comply with that condition, and his probation was revoked. In his appeal challenging the revocation of probation, the defendant claimed that the trial court lacked authority to impose the sexual offender treatment as a condition of probation. This court disagreed and affirmed the revocation of probation, concluding that although the statute under which the defendant was convicted was not an enumerated offense *requiring* sexual offender treatment; see General Statutes § 53a-30; the trial court nevertheless could legally impose such condition. *State* v. *Cyr,* supra, 747–48. Specifically, this court noted that the trial court imposed the condition only after it considered "the facts alleged in the risk of impairing morals of a child charges and concluded that given *the sexual nature and circumstances of the crimes for which the defendant was on probation,* and the fact that the victims were children, the sexual offender evaluation and treatment condition was reasonable, justified and *clearly related* to the defendant's rehabilitative needs

and the protection of society." (Emphasis added.) Id., 748.

In *State* v. *Smith*, 207 Conn. 152, 540 A.2d 679 (1988), in which the defendant had been convicted of robbery, he admitted that the robbery was committed so that he would be able to purchase drugs. Id., 154. One year into the defendant's probation, his probation officer determined that the defendant was involved with drugs again. Id., 155. As a result, a drug testing-urinalysis condition of probation was imposed and, after a positive urine test, the defendant's probation was violated. Id., 156–57. On appeal, our Supreme Court addressed the necessary connection between the added probation condition and rehabilitation for the offense that resulted in the underlying conviction. The court concluded: "It is simply unreasonable for the defendant, found guilty of robbery in the first degree intended to generate money to pay for drugs for himself, to believe that if, during the ongoing contact with the probation officer, the use of drugs was reasonably suggested by his conduct or appearance, he would never expect to be subject to some type of drug testing. . . . [T]he court was entitled to impose urinalysis testing. It clearly was reasonably related to the defendant's rehabilitation and to the goals of probation. It was a foreseeable consequence . . . ." Id., 172.

In *State* v. *Misiorski*, 250 Conn. 280, 282–83, 738 A.2d 595 (1999), the defendant pleaded guilty to sexual assault in the fourth degree and public indecency in a case involving a mentally impaired victim. The trial court ordered, as a condition of probation, that the defendant undergo sexual offender testing, counseling and treatment. Id., 284. Subsequently, the office of adult probation informed both the court and the defendant that it intended to notify the defendant's neighbors and fellow bowling league participants of the defendant's conviction. The defendant objected, and the court held

a hearing to determine whether the office of adult probation had authority to impose such a condition. Id., 284–85. The court found that it did. On appeal, the Supreme Court concluded: "Notification to the public was a reasonable component of the defendant's sexual offender treatment." Id., 289.

Conversely, in *State* v. *Thornton*, 55 Conn. App. 28, 739 A.2d 271 (1999), the defendant was convicted of risk of injury to a child, and this court held that it was not proper to impose as a condition of probation the payment of money into a fund to compensate the victim for presently unknown treatment costs. The court held: "[These costs were] far too remote to be considered 'reasonably related to the offense' or 'easily ascertainable damages for injury' to be allowed under § 53a-28 (c)." Id., 34.

In *State* v. *Graham*, supra, 33 Conn. App. 434. the defendant was convicted of larceny and drug offenses. The trial court imposed as a condition of probation that the defendant must keep her house and children clean and that any child of hers younger than age thirteen could not be left unattended. Id., 446. On appeal, this court held that the imposition of these conditions of probation was improper because the "conditions regarding cleanliness of the home and care and cleanliness of the children do not serve to rehabilitate or to reform the defendant because they do not relate to the defendant's behavior involved in her convictions for larceny and drug crimes." Id., 448.

On the basis of the previously discussed case law, it is evident that in order for a condition of probation to be "reasonably related to the defendant's rehabilitation" pursuant to § 53a-30 (a) (17),[1] there must be a nexus

---

[1] General Statutes § 53a-30 (a) provides in relevant part: "When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant . . . (17) satisfy any other conditions reasonably related to the defendant's rehabilitation. . . ."

between the condition of probation and the charge for which the defendant is serving probation. Such a requirement not only serves to rehabilitate a defendant on the basis of the crime committed but also protects the constitutional rights of the probationer.[2]

Here, the defendant pleaded guilty to operating a motor vehicle while under the influence of intoxicating liquor or drugs. There was no sexual component involved in this offense. Thus, the condition imposing sexual offender evaluation and treatment is not related to the offense for which the defendant is on probation. The court rationalized its imposition of sexual offender evaluation and treatment by stating that because alcohol was the common denominator in his criminal history, including his sexual offense from more than ten years prior, the added condition was reasonably related to the defendant's conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs. The fact that alcohol may have been the common denominator in the defendant's criminal history might support the imposition of the requirement of alcohol counseling for any of his other crimes. Because the defendant's sexual conduct was not a common thread in the defendant's criminal history and was wholly unrelated to the defendant's present conviction, however, there is no logical nexus between the added condition of probation and the underlying offense of which he was convicted.

On the basis of the foregoing, we conclude that the court abused its discretion by modifying the conditions

---

[2] The defendant also claims on appeal that the imposition of the sexual offender condition violates his constitutional rights because it renders his plea unknowing and involuntary and amounts to an additional punishment for a sexual offense that he committed more than ten years ago, an offense for which he has served his sentence. Because we agree with the defendant's first claim, we need not address his additional claims.

of the defendant's probation and imposing the requirement of sexual offender evaluation and treatment.

The judgment is reversed and the case is remanded with direction to deny the motion for modification of the conditions of probation.

In this opinion McLACHLAN, J., concurred.

LAVINE, J., dissenting. "Since probation is, first and foremost, a penal alternative to incarceration—its objectives are to foster the offender's reformation and to preserve the public's safety—a sentencing court must have the discretion to fashion those conditions of probation it deems necessary to ensure that the individual successfully completes the terms of probation." *State* v. *Smith*, 207 Conn. 152, 168–69, 540 A.2d 679 (1988). The majority would reverse the judgment of the trial court "[b]ecause there is no nexus between the modified condition [of probation] and the [conviction] for which the defendant [Kevin M. Boyle] is serving probation . . . ." I disagree. Moreover, I think the majority improperly focuses on the modified condition's relationship to the *charge of conviction*, rather than its relationship to the appropriate purposes of probation, including "the legitimate needs of law enforcement." (Internal quotation marks omitted.) *State* v. *Thorp*, 57 Conn. App. 112, 117, 747 A.2d 537, cert. denied, 253 Conn. 913, 754 A.2d 162 (2000). In my view, the majority's conclusion undermines the clear purpose of General Statutes § 53a-30 (c).[1] I therefore respectfully dissent.

---

[1] General Statutes § 53a-30 (c) provides: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any."

In granting the motion for modification of probation filed by the office of adult probation, the court stated in its memorandum of decision:[2] "While the defendant's claim of remoteness, and a lack of overt connection between sex offender treatment and the underlying crime of operating [a motor vehicle while under the influence of intoxicating liquor or drugs] are relevant inquiries, the court is not persuaded that the requested modification is inappropriate. As noted previously, the defendant remains obligated to register as a sex offender until 2009. In enacting [General Statutes] § 54-102s, Connecticut's 'Megan's Law,' it was the legislature's intent to require sex offender registration as '[in] response to concerns regarding the harm to society caused by sex crimes and the relatively high rate of recidivism among sex offenders' . . . . *State* v. *Misiorski*, 250 Conn. 280, 292, 738 A.2d 595 (1999). . . .

"Therefore, the registration requirement is not only an express recognition that a danger to public safety exists, but also a recognition that it exists to such a degree that the public is entitled to be kept informed of the defendant's whereabouts. . . .

"Said [proposed] condition is reasonably related to the purposes of probation. Although the defendant is on probation for operating [a motor vehicle while under

---

[2] The probation officer attached to the motion for modification a report dated January 16, 2001, from "The Connection, Incorporated," described as a "Special Services Center for the Treatment of Problem Sexual Behavior." The defendant had been evaluated on January 12, 2001, when he was serving a three year sentence for arson in the third degree, assault in the third degree and reckless endangerment. The report noted that the defendant "had been arrested on three occasions for criminal sexually related behavior." The report contained a section entitled "Risk Assessment," which characterized the defendant's "dangerousness rating" as severe and concluded that his "Recidivism/Sex Offense Relapse Risk, or Likelihood of Future Risk Potential" was high. The report also concluded that the defendant demonstrated little insight into what the report characterized as a "significant mental health problem."

the influence of intoxicating liquor or drugs], the court observes that [the office of adult] probation is legitimately concerned about the nexus between the defendant's alcohol consumption and the conduct which resulted in his sexual assault conviction.

"The court finds that the evidence and law support the conclusion that such a condition is reasonably necessary to rehabilitate the defendant and reasonably necessary to protect prospective victims.

"Therefore, the request to modify the defendant's probation to include a requirement that he review, sign and abide by all sex offender conditions of probation, to include sex offender evaluation and any recommended treatment, polygraph examinations and Abel screens [which are specialized tests to determine a person's sexual interest in children] as deemed necessary by the office of adult probation is granted."[3]

## THE STANDARD OF REVIEW

Both parties agree that the decision of the court is entitled to considerable deference and is reviewed under the abuse of discretion standard. "[I]n modifying or expanding the conditions of probation to serve the ends of justice, the court's objective must be to impose special conditions that foster the offender's reformation

---

[3] In *Roe* v. *Office of Adult Probation*, 125 F.3d 47 (2d Cir. 1997), the United States Court of Appeals for the Second Circuit discussed the purposes of probation and the notification provision of Connecticut's Megan's Law. "In response to . . . concerns regarding the harm to society caused by sex crimes and the relatively high rate of recidivism among sex offenders, which have prompted the enactment of sex offender registration and notification statutes around the country, Connecticut has . . . enacted its own version of Megan's Law. . . . The law required these offenders to provide certain registration information to law enforcement officials . . . ." (Citations omitted; internal quotation marks omitted.) Id., 48–49.

Although *Roe* concerned the notification provision in the context of an ex post facto claim, the Second Circuit found that the notification policy adopted by the office of adult probation was intended to foster the rehabilitation of sex offenders and to protect society. Id., 50–51.

as well as preserve the public's safety. The broad power to impose conditions permits insulating the individual from the conditions that led him into trouble. . . . The trial court therefore has broad discretion to modify or enlarge the conditions of probation, for good cause shown, at any time during the period of probation.

"The appropriate standard of review of a trial court's actions is whether the trial court abused its discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . There is no hard and fast rule by which an abuse of discretion may be determined but, in general, for an exercise of discretion not to amount to an abuse, it must be legally sound and there must be an honest attempt by the court to do what is right and equitable under the circumstances of the law, without the dictates of whim or caprice." (Citations omitted; internal quotation marks omitted.) *State* v. *Medley*, 48 Conn. App. 662, 665–66, 711 A.2d 1191, cert. denied, 245 Conn. 915, 718 A.2d 19 (1998).

"If it appears that the trial court reasonably was satisfied that the terms of probation had a beneficial purpose consistent with the defendant's reformation and rehabilitation, then the order must stand." *State* v. *Pieger*, 240 Conn. 639, 648, 692 A.2d 1273 (1997). The issue before this court is not whether another court would have come to the same conclusion but whether "the [trial] court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Cancel*, 275 Conn. 1, 15, 878 A.2d 1103 (2005). A defendant who seeks to reverse the exercise of discretion "assumes a heavy burden . . . ." (Internal quotation marks omitted.) *State* v. *Tirado*, 194 Conn. 89, 95, 478 A.2d 606 (1984).

## THE POLICY BASIS OF PROBATION

"Probation is the product of statute. See General Statutes § 53a-28 et seq. Statutes authorizing probation, while setting parameters for doing so, have been very often construed to give the court broad discretion in imposing conditions." *State* v. *Smith*, supra, 207 Conn. 167.

"Probation is, first and foremost, a penal alternative to incarceration—its objectives are to foster the offender's reformation and to preserve the public's safety. For that reason, a sentencing court is afforded broad discretion to fashion those conditions of probation it deems necessary to ensure the individual successfully completes his term of probation. . . . When necessary, the sentencing court has discretion to impose conditions that impinge on otherwise inviolable rights. In determining whether a probation condition unduly intrudes on a constitutionally-protected freedom, a reviewing court evaluates the condition in the following context:

"The conditions must be reasonably related to the purposes of the [Probation] Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement." (Internal quotation marks omitted.) *United States* v. *Williams*, 787 F.2d 1182, 1185 (7th Cir. 1986); *State* v. *Pieger*, supra, 240 Conn. 647–48.

"The success of probation as a correctional tool is in large part tied to the flexibility within which it is permitted to operate. . . . To ensure this success, the trial judge has an exceptional degree of flexibility in determining whether to grant . . . probation and on

what terms." (Citations omitted; internal quotation marks omitted.) *State* v. *Pieger,* supra, 240 Conn. 648.

"Pursuant to § 53a-30 (a), a sentencing court may impose a variety of conditions to a sentence of probation, all of which are aimed at rehabilitating the defendant. Within the permitted statutory conditions, the court may direct medical or psychiatric treatment, impose support obligations, require suitable employment, set housing restrictions, and order restitution. . . . Unlike these specific provisions of § 53a-30 (a), the terms of subdivision [17][4] are very broad. By allowing the trial court to impose '*any other* conditions reasonably related to [the defendant's] rehabilitation' . . . the legislature authorized the court to impose any condition that would help to secure the defendant's reformation. This broad power is consistent with the general goals of probation." (Citation omitted; emphasis in original.) Id., 646–47.

## THE FACTS

On July 28, 2006, Christopher J. Pribyson, the probation officer assigned to the defendant, filed a motion to modify the terms of the defendant's probation to require the defendant to review, sign and abide by all sex offender conditions of probation, to include sex offender evaluation and any recommended treatment, polygraph examinations and Abel screens as deemed necessary by the office of adult probation. The motion stated that the modification was necessary for the office of adult probation to supervise the defendant adequately in the community and to offer the most effective supervision for the safety of the community and the public at large.

---

[4] General Statutes § 53a-30 (a) provides in relevant part: "When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant . . . (17) satisfy any other conditions reasonably related to the defendant's rehabilitation. . . ."

Pribyson testified for the state in favor of the granting of the motion for modification. Pribyson has extensive experience in the supervision of sex offenders.[5] He explained to the court the manner in which the defendant's case came to his attention and the reason for his concerns. The defendant's file originally was assigned to the intake assessment referral unit. After the defendant's criminal history was noted, the file was transferred to one of the three sex offender probation officers in the office of adult probation. The court support services division's policy (policy), which was placed into evidence, required that the defendant be supervised by a specialized sex offender probation officer. Pribyson noted that the defendant was registered with the state police roll of sex offenders. Although he is a registered sex offender, the defendant had not been supervised as a sex offender by the office of adult probation during the last ten years.[6] The policy required that Pribyson file a motion for modification of the defendant's probation.[7]

---

[5] Pribyson testified at the August 2, 2006, hearing that he was finishing his fifth year of supervising a sex offender caseload and that he had handled sixty to eighty sex offender cases. He indicated, in response to a question, that his experiences within the specialized sex offender unit in which he worked had caused him to conclude that filing the subject motion for modification of probation was necessary.

[6] Pribyson testified in part: "In general, if the person is being supervised as a sex offender, then they're going to adhere to the sex offender conditions of probation for a conviction on a sex offense crime. If they were supervised in the last ten years as a sex offender and sex offender conditions of probation, which include the evaluation and recommended treatment, can be imposed, the loophole there is that an individual like [the defendant] might be on for something completely different; the ten year window has expired or it doesn't—the old probation doesn't apply because it has been closed out and then the . . . policy requires us to file the motion for the modification to be able to impose the sex offender conditions with the recommended evaluation and—or with the evaluation and any recommended treatment."

[7] Pribyson testified in part that "[l]ooking into the past police reports, which I obtained from other closed probation files and reading the narratives from those police reports, as well as obtaining the 2001 . . . sex offender evaluation, which was completed by special services . . . done for a parole

In response to the state's question as to whether there was anything specific to which he could cite that gave him a reason to request the modification, Pribyson testified: "[C]onversations with the [defendant] in how he related to me his past history with alcohol and reviewing the police reports in which alcohol was a huge risk factor, a dynamic risk factor. If he was to, you know, start to use [alcohol] again—that was a situation in which the sex offenses occurred—that would be a huge concern." He also testified that the defendant's 2001 evaluation for risk of reoffending stood out because it was at a high level, which Pribyson did not usually see.

The court specifically asked Pribyson why the evaluation was necessary and what it had to do with the defendant's reasonable rehabilitation:

"The Court: [W]hat is it about the defendant's present posture, based upon your training and experience and based upon his past history, that makes you feel that a sex offender evaluation and any follow-up treatment is reasonably related to his rehabilitation based upon the probation for the crime he's presently on?

"[The Witness]: Presently, nothing.

"The Court: But you feel as though adding a condition of sex offender evaluation is reasonably related to his rehabilitation because of the—just the position of alcohol with his past crimes and the fact that the alcohol obviously was the basis for which he's presently on probation?

"[The Witness]: Yes, and in reviewing the other police reports, the same types of behavior were exhibited in

board evaluation—[i]n reviewing that, I felt that it was necessary to file the motion for modification so that it can be heard; that he can be represented by an attorney; that we can then try to figure out if we should impose the evaluation and, or complete supervision of him on the sex offender caseload along with the sex offender conditions of probation to ensure appropriate supervision in the community."

those incidents. Those incidents and those behaviors are the static factors that are involved and those won't change, and the dynamic risk factors involved medical—his medical attention, his being sober. If those things were to change slightly, the whole situation could change drastically.

"The Court: Why do you think adding these conditions is reasonably related to his rehabilitation, why exactly?

"[The Witness]: Starting with the evaluations, since the evaluation is from 2001, without having somebody who's qualified to do the evaluation and at least having an evaluation completed, I really don't have an idea if he should or shouldn't be in sex offender treatment. If they determine that he doesn't need to be in sex offender treatment then, you know, there's no reason to go on further.

\* \* \*

"The Court: I mean, my direct question is, in other words, I understand what you're saying in terms of what the evaluation itself can tell you, but what I'm asking you is, what is it about ordering a sex offender evaluation that you feel is reasonably related to his rehabilitation at the moment? In other words, is it based on your training and experience, looking at his past history

. . . .

"[The Witness]: I don't think it's so much related to his rehabilitation as much as it is to his supervision and the *safety to the community* as a probation department." (Emphasis added.)

### DISCUSSION

The discretion of courts to impose additional conditions of probation is, of course, not without limits. *State v. Thornton*, 55 Conn. App. 28, 32–33, 739 A.2d 271

(1999). Imposing, or adding, conditions of probation should not be based on the personal preferences or idiosyncrasies of a probation officer or court, or some vague notion that the proposed condition is good for the probationer or society. See, e.g., *State* v. *Graham*, 33 Conn. App. 432, 446–48, 636 A.2d 852 (conditions of probation requiring defendant convicted of narcotics offense and larceny to provide for proper care and cleaning of home and prohibiting children younger than age thirteen being left alone without adult not reasonably related to the purposes of probation), cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). Conditions of probation, whether imposed at the time of sentencing or after, must reasonably relate to the purposes of probation, i.e., rehabilitation of the offender and protecting society. *State* v. *Smith*, supra, 207 Conn. 168–69.

The mere existence of § 53a-30 (c), however, demonstrates that the legislature has concluded that there are instances in which conditions of probation, not contemplated at the time of plea or sentencing, ought to be added, subject to a finding of "good cause." See footnote 1. In this case, numerous factors supported the concern of the probation officer, and the ruling of the court, that sex offender evaluation, and possibly treatment, were warranted. They include (1) the defendant's status as a registered sex offender until 2009, (2) the 2001 sex offender evaluation, (3) the history of "alcohol fueled conduct" testified about by Pribyson, including the fact that the defendant's 1997 conviction of sexual assault in the fourth degree was alcohol related, (4) Pribyson's conversations with the defendant, which confirmed, in Pribyson's judgment, the link between alcohol and criminal conduct, (5) the April 5, 2006 conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a. The defendant's alcohol fueled conduct, in the context of all the facts in this case, provides

the necessary factual nexus between the proposed condition of probation and preserving public safety. Cf. *State* v. *Repetti*, 60 Conn. App. 614, 620–22, 760 A.2d 964 (approving probation officer's requirement that defendant refrain from use of alcohol as part of sex offender treatment), cert. denied, 255 Conn. 923, 763 A.2d 1043 (2000).

The majority cites the three-pronged test to be used by a reviewing court to evaluate the condition of probation imposed, i.e., (1) the purposes sought to be served by probation, (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers and (3) the legitimate needs of law enforcement. The majority then states that "[i]n the present case, our focus is on the first factor, the purposes sought to be served by probation." The majority thus wholly ignores the third factor, "the legitimate needs of law enforcement," which informed Pribyson's judgment and was an integral part of the court's analysis.

A review of the cases indicates the consistent focus that has been placed on whether there is a sufficient relationship between the condition imposed, or sought to be added, and the purposes of rehabilitation. *State* v. *Pieger*, supra, 240 Conn. 648 (if it appears court reasonably satisfied terms of probation had beneficial purpose consistent with defendant's reformation and rehabilitation, order must stand). The majority nonetheless concludes that "it is evident that in order for a condition of probation to be 'reasonably related to the defendant's rehabilitation' pursuant to General Statutes § 53a-30 (a) (17), there *must* be a nexus between the condition of probation and the [*conviction*] for which the defendant is serving probation." (Emphasis added.) The cases cited by the majority, however, do not support this broad assertion.[8]

---

[8] In *Pieger*, one of the cases on which the majority relies, the defendant was required, as a condition of his probation, to donate $2500 to the hospital

Of course, it often happens that conditions of probation will bear a direct relationship to the offense of conviction, e.g., a condition that the probationer convicted of using, or selling, controlled substances, not possess, or sell, any illegal substances or weapons. This does not mean that all probation conditions, in the wide range of cases in our courts, must stem directly from the offense of conviction.

Section 53a-30 (c) provides a mechanism for cases, such as this, in which postsentencing information or developments persuade a probation officer that permission should be sought to add an additional probation condition. The majority's approach would frustrate the purpose of the statute in cases in which information is not available, or known, or its significance not fully appreciated, at the time of the plea or the sentencing, but instead comes to light during the period of probation.

The defendant also claims on appeal that the imposition of the sexual offender condition violates his consti-

in which the victim had been treated after being struck and seriously injured by the defendant's motor vehicle. "[A]s long as the condition requiring monetary payment shares a nexus with the defendant's crime . . . it is reasonably related to rehabilitation." *State* v. *Pieger*, supra, 240 Conn. 651. The *Pieger* court did *not* state that a condition could never be appropriate unless it shared a nexus with the defendant's crime.

In *State* v. *Cyr*, 57 Conn. App. 743, 751 A.2d 420, cert. denied, 254 Conn. 905, 755 A.2d 883 (2000), the issue was whether the court had the authority to add sex offender treatment as a condition although the offense of which the defendant was convicted was not an enumerated offense in General Statutes § 53a-30 requiring such treatment. *State* v. *Misiorski*, supra, 250 Conn. 280, concerned whether the court properly upheld the authority of the office of adult probation to give notification to neighbors about that defendant's sexual assault conviction pursuant to General Statutes §§ 54-102s and 54-108. *State* v. *Thornton*, supra, 55 Conn. App. 28, in which the court invalidated a condition that would have required the defendant to pay money into a fund for expenses for long-term counseling of the victim, was decided under a statute relating to restitution; see General Statutes § 53a-28; and was based in part on the fact that the trial court had made no finding whatsoever with respect to actual expenses or anticipated out-of-pocket expenses for the victim's anticipated care. *State* v. *Thornton*, supra, 33.

tutional rights because it renders his plea unknowing and involuntary and amounts to additional punishment for the sexual offense of which he had been convicted and for which he has served his sentence. Both of these arguments are without merit. The additional condition was added only after notice, a hearing and a full and fair opportunity to contest the matter. In accepting probation, the defendant accepted at the time of sentencing the possibility that the terms of his probation could be modified or enlarged in the future in accordance with the statutes governing probation. See *State* v. *Thorp*, supra, 57 Conn. App. 121.[9]

In sum, I conclude that the evidence before the court demonstrated good cause to grant the state's motion to modify the defendant's probation to include the disputed condition. The defendant's probation officer had approximately five years of experience supervising between sixty and eighty sex offenders and followed the policy of the court support services division with respect to sex offenders who are on probation for other offenses. The defendant is required to register as a sex offender until 2009. There is a connection between the defendant's prior sexual offenses and his use of alcohol, which is the root of the current offense for which he is on probation, i.e., operating a motor vehicle while under the influence of intoxicating liquor or drugs. The more support programs that are in place, the less likely a probationer is to reoffend. Furthermore, the office of adult probation is charged, in part, with protecting the

[9] Although the defendant argues in his brief that the modification punishes him twice for the same offense, he concedes that it is not precisely a double jeopardy claim. The argument has no legal basis. This court has stated that double jeopardy is not applicable to probation revocation proceedings because in revocation proceedings, the defendant is not exposed to a criminal prosecution for the same offense following conviction. *State* v. *Gauthier*, 73 Conn. App. 781, 793–94, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003).

general public. Without a current sex offender evaluation, it is not known what, if any, services the defendant needs to avoid reoffending and what steps are necessary to protect the public. I conclude that the court did not abuse its discretion by granting the motion to modify because the dual purposes of probation will be served by requiring the defendant to undergo sex offender evaluation at this time. For these reasons, I respectfully dissent.