## STATE OF CONNECTICUT *v.* MARC PIEGER
### (15546)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued March 25—officially released April 29, 1997

*Earle Giovanniello*, with whom, on the brief, was *Frank J. Riccio*, for the appellant (defendant).

*Lisa Herskowitz*, deputy assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Nicholas J. Bove, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the Appellate Court properly concluded that the trial court acted within its discretion when, as part of the defendant's sentence, it imposed as a condition of probation that the defendant make a charitable donation to the hospital where the victim had been treated

after being struck and seriously injured by the defendant's motor vehicle. We conclude that the trial court acted within its discretion when it imposed the condition.

The following facts, as found by the trial court following a bench trial, are relevant to our decision. "[O]n March 29, 1992, at approximately 9 p.m., the defendant [Marc Pieger] was the owner and operator of a motor vehicle that struck and seriously injured Tammy Sheldon as she crossed Noble Avenue in Bridgeport. . . . [T]he defendant left the scene of the accident without stopping to render assistance or to give his name and address to the police officer or a witness. . . . [T]he defendant knew he was involved in an accident based on [the fact] that the defendant drove his vehicle around Sheldon as she lay in the highway." *State* v. *Pieger*, 42 Conn. App. 460, 462, 680 A.2d 1001 (1996). Thereafter, the trial court found the defendant guilty of evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a),[1] but acquitted him of reckless driving.

[1] General Statutes § 14-224 provides: "Evasion of responsibility in operation of motor vehicles. Racing. Required removal of motor vehicle from traveled portion of highway. (a) Each person operating a motor vehicle who is knowingly involved in an accident which causes serious physical injury, as defined in section 53a-3, to or results in the death of any other person shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to any officer or witness to the death or serious physical injury of any person, and if such operator of the motor vehicle causing the death or serious physical injury of any person is unable to give his name, address and operator's license number and registration number to the person injured or to any witness or officer, for any reason or cause, such operator shall immediately report such death or serious physical injury of any person to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the death or serious physical injury of any person and his name, address, operator's license number and registration number.

"(b) Each person operating a motor vehicle who is knowingly involved in an accident which causes physical injury, as defined in section 53a-3, to

Following the defendant's conviction of evading responsibility, the office of adult probation (office) prepared a presentence investigation report in accordance with its responsibilities pursuant to Practice Book § 910 et seq., which indicated that the victim had sustained very serious injuries resulting in more than $1,000,000 in medical bills, and that the defendant's motor vehicle insurance company had paid its policy limit of $50,000.

any other person or injury or damage to property shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to the owner of the injured or damaged property, or to any officer or witness to the physical injury to person or injury or damage to property, and if such operator of the motor vehicle causing the physical injury of any person or injury or damage to any property is unable to give his name, address and operator's license number and registration number to the person injured or the owner of the property injured or damaged, or to any witness or officer, for any reason or cause, such operator shall immediately report such physical injury of any person or injury or damage to property to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the physical injury of any person or the injury or damage to property and his name, address, operator's license number and registration number.

"(c) No person shall operate a motor vehicle upon any public highway for a wager or for any race or for the purpose of making a speed record.

"(d) Each person operating a motor vehicle who is knowingly involved in an accident on a limited access highway which causes damage to property only shall immediately move or cause his motor vehicle to be moved from the traveled portion of the highway to an untraveled area which is adjacent to the accident site if it is possible to move the motor vehicle without risk of further damage to property or injury to any person.

"(e) No person who acts in accordance with the provisions of subsection (d) of this section may be considered to have violated subsection (b) of this section.

"(f) Any person who violates the provisions of subsection (a) of this section shall be fined not more than five thousand dollars or be imprisoned not less than one year nor more than five years or be both fined and imprisoned.

"(g) Any person who violates the provisions of subsection (b) or (c) of this section shall be fined not less than seventy-five dollars nor more than six hundred dollars or be imprisoned not more than one year or be both fined and imprisoned, and for any subsequent offense shall be fined not less than one hundred dollars nor more than one thousand dollars or imprisoned not more than one year or be both fined and imprisoned."

The office concluded that the victim would incur out-of-pocket expenses, but the exact amount could not be determined because she was continuing to receive treatment. In addition to the imposition of a sentence, followed by a period of probation, the office recommended that the court impose community service and a charitable contribution as conditions of probation.

The court sentenced the defendant to a five year term of imprisonment, execution suspended after eighteen months, and placed him on probation for five years subject to the following conditions: (1) that his privilege to operate a motor vehicle be suspended for thirty months; (2) that he perform 500 hours of community service; and (3) that he "make a charity donation of $2500 to New Britain Hospital," where, as a result of the accident, the victim had been hospitalized for more than one year. See General Statutes (Rev. to 1995) § 53a-30.[2] The defendant thereafter appealed from the trial

[2] General Statutes (Rev. to 1995) § 53a-30 provides: "Conditions of probation and conditional discharge. (a) When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant: (1) Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip him for suitable employment; (2) undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose; (3) support his dependents and meet other family obligations; (4) make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance; (5) if a minor, (A) reside with his parents or in a suitable foster home, (B) attend school, and (C) contribute to his own support in any home or foster home; (6) post a bond or other security for the performance of any or all conditions imposed; (7) refrain from violating any criminal law of the United States, this state or any other state; (8) if convicted of a misdemeanor or a felony, other than a capital felony, a class A felony or a violation of section 21a-278, 21a-278a, 53a-55, 53a-56, 53a-56b, 53a-57, 53a-58 or 53a-70b or any offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court, and any sentence of imprisonment is suspended, participate in an alternate incarceration program; (9) reside in a residential community center or halfway house

court's judgment to the Appellate Court, raising, inter alia, the propriety of the charitable donation condition. The Appellate Court affirmed the judgment, concluding that the trial court had acted within its discretion in imposing the condition of probation because it was "reasonably related to the defendant's rehabilitation." *State* v. *Pieger*, supra, 42 Conn. App. 468. This court subsequently granted the defendant's petition for certification, limited to the following issue: "Did the Appellate Court properly conclude that the trial court, in sentencing the defendant, could impose as part of the sentence or as a condition of probation the payment of a $2500 charitable 'contribution' to New Britain Hospital?" *State* v. *Pieger*, 239 Conn. 927, 683 A.2d 398 (1996).

The defendant claims that the trial court lacked authority to order the charitable donation as part of his

approved by the commissioner of correction, and contribute to the cost incident to such residence; (10) participate in a program of community service labor in accordance with section 53a-39c; (11) if convicted of a violation of section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b and (A) the conviction is of a second or subsequent violation of any of said sections or (B) at the time of the offense, the defendant was eighteen years of age or older and the victim was under thirteen years of age, undergo specialized sexual offender treatment; (12) satisfy any other conditions reasonably related to his rehabilitation. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any.

"(b) When a defendant has been sentenced to a period of probation, the Office of Adult Probation may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court.

"(c) At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any.

"(d) The period of participation in an alternate incarceration program, unless terminated sooner, shall not exceed the period of probation authorized by section 53a-29 or two years, whichever is less."

sentence. He further argues that the trial court was similarly without the authority to order him to pay money to a third party as a condition of probation. The state does not defend the ordering of the charitable donation as a criminal *sentence*; rather, it argues in response that because the payment was reasonably related to the defendant's rehabilitation and, consequently, authorized under General Statutes (Rev. to 1995) § 53a-30 (a) (12), the trial court acted within its discretion in imposing the charitable donation as one condition of *probation*. We agree with the state.

Relying on § 53a-30 (a), which provides in relevant part that "[w]hen imposing sentence of probation . . . the court may . . . order that the defendant . . . (12) satisfy any other conditions reasonably related to his rehabilitation," the state contends that by ordering the donation to the hospital, the court imposed on the defendant a consequence that had a direct relationship to his criminal conduct. The defendant argues in response that the state may not rely on § 53a-30 (a) (12) as "a device for trial courts to redirect fines from the state coffers to third parties." The defendant further argues that "there is no added rehabilitative effect from being ordered to pay a third party than there would be to pay a fine," and that the statutory provisions authorizing restitution; General Statutes (Rev. to 1995) § 53a-30 (a) (4); and the payment of fines; General Statutes § 53a-28; adequately provide whatever rehabilitative effect that being required to pay money would have. Finally, the defendant argues that if we were to interpret § 53a-30 (a) (12) to include monetary payments to third parties, trial courts effectively would be able to impose fines in excess of the statutory amount authorized by § 14-224 (f). See footnote 1. We conclude that the trial court reasonably could have determined that ordering the defendant to make a charitable donation of $2500

to the hospital where the victim of his crime had been treated for more than one year was an appropriate vehicle by which to help the defendant accept responsibility for the consequences of his conduct.

In order to determine whether the legislature intended to allow charitable contributions as a condition of probation, we begin with familiar principles of statutory construction. "It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history[3] and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation. . . ." (Citation omitted; internal quotation marks omitted.) *Murchison* v. *Civil Service Commission*, 234 Conn. 35, 45, 660 A.2d 850 (1995). We first look to the language of the statute and to the general goals of probation in order to discern the intent of the legislature in enacting subdivision (12) of § 53a-30 (a).

Pursuant to § 53a-30 (a), a sentencing court may impose a variety of conditions to a sentence of probation, all of which are aimed at rehabilitating the defendant. Within the permitted statutory conditions, the court may direct medical or psychiatric treatment, impose support obligations, require suitable employment, set housing restrictions, and order restitution. See footnote 2. Unlike these specific provisions of § 53a-30 (a), the terms of subdivision (12) are very broad. By allowing the trial court to impose "*any other* conditions reasonably related to [the defendant's] rehabilitation"; (emphasis added) General Statutes (Rev. to 1995) § 53a-30 (a) (12); the legislature authorized the court to

---

[3] We note that in the present case, there is no useful legislative history to guide our analysis.

impose any condition that would help to secure the defendant's reformation. This broad power is consistent with the general goals of probation.

"Probation is the product of statute. See General Statutes § 53a-28 et seq. Statutes authorizing probation, while setting parameters for doing so, have been very often construed to give the court broad discretion in imposing conditions. *United States* v. *Tolla*, 781 F.2d 29, 32 (2d Cir. 1986); see, e.g., *United States* v. *Torrez-Flores*, 624 F.2d 776, 784 (7th Cir. 1980); *United States* v. *Weber*, 437 F.2d 1218, 1220 (7th Cir.), cert. denied, 402 U.S. 1008, 91 S. Ct. 2189, 29 L. Ed. 2d 430 (1971); *State* v. *Pilch*, 35 Conn. Sup. 536, 539, 394 A.2d 1364 (1977); *People* v. *Walmsley*, 168 Cal. App. 3d 636, 639, 214 Cal. Rptr. 170 (1985); *State* v. *Ripperger*, 284 N.W.2d 884, 885 (S.D. 1979); *State* v. *Blight*, 89 Wash. 2d 38, 41, 569 P.2d 1129 (1977)." *State* v. *Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988).

Additionally, because "probation is, first and foremost, a penal alternative to incarceration—its objectives are to foster the offender's reformation and to preserve the public's safety—a sentencing court must have the discretion to fashion those conditions of probation it deems necessary to ensure that the individual successfully completes the terms of probation. *United States* v. *Williams*, 787 F.2d 1182, 1185 (7th Cir. 1986)." *State* v. *Smith*, supra, 207 Conn. 168–69.

"[I]n determining whether a condition of probation [is proper] . . . a reviewing court should evaluate the condition imposed under our Adult Probation Act in the following context: The conditions must be reasonably related to the purposes of the [Probation] Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citi-

zens should be accorded to probationers; and (3) the legitimate needs of law enforcement. *United States* v. *Williams,* supra, [787 F.2d] 1185; *United States* v. *Pierce,* 561 F.2d 735, 739 (9th Cir. 1977), cert. denied, 435 U.S. 923, 98 S. Ct. 1486, 55 L. Ed. 2d 516 (1978); see also *United States* v. *Consuelo-Gonzalez,* [521 F.2d 259, 264–65 n.14 (9th Cir. 1975)]." (Internal quotation marks omitted.) *State* v. *Smith,* supra, 207 Conn. 170.

In deciding the issue before us, we recognize the ongoing authority of the court in overseeing the probation process. "The success of probation as a correctional tool is in large part tied to the flexibility within which it is permitted to operate. ABA Standards Relating to Probation § 3.3 commentary (Approved Draft 1970). *Buckley* v. *Quincy Division of District Court Department,* 395 Mass. 815, 818, 482 N.E.2d 511 (1985)." (Internal quotation marks omitted.) *State* v. *Smith,* supra, 207 Conn. 171. To ensure this success, "the trial judge has an exceptional degree of flexibility in determining whether to grant . . . probation and on what terms." (Internal quotation marks omitted.) Id., 164.

On appeal, the standard of review of an order of probation is whether the trial court abused its discretion. If it appears that the trial court reasonably was satisfied that the terms of probation had a beneficial purpose consistent with the defendant's reformation and rehabilitation, then the order must stand. Id., 167. "In reviewing the issue of discretion, we do so according it every reasonable presumption in favor of the trial court's ruling. *State* v. *Amarillo,* 198 Conn. 285, 313–14, 503 A.2d 146 (1986). [Finally, a] defendant who seeks to reverse the exercise of judicial discretion assumes a heavy burden. *State* v. *Tirado,* 194 Conn. 89, 95, 478 A.2d 606 (1984)." *State* v. *Smith,* supra, 207 Conn. 167.

We conclude that the trial court acted within its discretion in setting the charitable donation as a condition

of probation in an attempt to foster the defendant's reformation. The defendant had been convicted of evading responsibility for his role in an accident that had caused serious physical injury to the victim. Furthermore, despite the trial court's findings the defendant continued to deny any involvement in the accident up to and including the time of his sentencing. The trial court was therefore justified in its attempt to make the defendant recognize his role in causing the physical injury suffered by the victim and the expenses the victim incurred as a consequence.[4]

Indeed, the trial court imposed a realistic method of making the defendant aware of his conduct and its consequences. By encouraging the defendant to accept his responsibility in the victim's tragedy, the court acted to ensure that the probation would "[serve] as a period of genuine rehabilitation . . . ." (Internal quotation marks omitted.) *State* v. *Graham*, 33 Conn. App. 432, 448, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). "By seeking to force the defendant to accept the responsibility he attempted to evade by leaving the scene of the accident without identifying himself, the . . . condition acts both as a deterrent to future attempts to evade his legal and financial duties as a motorist and as a rehabilitative measure tailored to correct the behavior leading to his conviction." *People* v. *Carbajal*, 10 Cal. 4th 1114, 1124, 899 P.2d 67, 43 Cal. Rptr. 2d 681 (1995) (en banc). Although the order at issue in *Carbajal* was an order for restitution for property damage, we are persuaded that this reasoning is

---

[4] The defendant points out that the trial court acquitted him of reckless driving. That decision, however, did not undermine the trial court's findings that the defendant was the owner and operator of a motor vehicle that had struck and seriously injured the victim and that the defendant knew he had been involved in the accident. The defendant may not have been driving at such a rate of speed so as to endanger the life of another, but he was nevertheless knowingly involved in an accident causing serious physical injury and failed to stop.

equally applicable to an appropriately limited order to make a charitable donation.

The defendant does not dispute that requiring the payment of money for his crime might be rehabilitative, or that he could have been fined as much as $5000. He argues, nevertheless, that the beneficial purpose of a financial contribution could have been achieved by the imposition of a fine, and that the payment to the hospital would have no more of a rehabilitative effect than payment to the state. We disagree. The condition of a charitable contribution "is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will [a]ffect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity . . . . [T]he direct relation between the harm and the punishment gives [the condition] a more precise deterrent effect than a traditional fine." (Internal quotation marks omitted.) Id.

In this case, requiring the defendant to make a donation to the hospital that had provided most of the victim's treatment was more rehabilitative than requiring the defendant to pay a fine because the donation had a direct relationship to the accident and the injuries, thereby advancing the rehabilitative purpose of making the defendant accept his responsibility for the accident. Other jurisdictions have upheld conditions requiring monetary payments that were not explicitly authorized by statute when those conditions shared a nexus with the defendant's crime. See *United States* v. *Daddato,* 996 F.2d 903 (7th Cir. 1993) (trial court had discretion to order defendant convicted of selling hallucinogenic mushrooms, as condition of supervised release, to repay $3650 he received from law enforcement officers during undercover drug sale); *People* v. *Burleigh,* 727 P.2d 873 (Colo. App. 1986) (trial court properly imposed as condition of probation that doctor, convicted of unlawfully

dispensing controlled substance, donate $5000 to drug treatment center); *Hafner* v. *Leapley*, 520 N.W.2d 252 (S.D. 1994) (trial court could order defendant convicted of sexual assault, as condition of probation, to pay $5000 to county as compensation for county victim assistant); *State* v. *Brown*, 174 Wis. 2d 550, 497 N.W.2d 463 (1993) (trial court reasonably imposed condition that defendant convicted of sexual assault pay $7000 tuition cost of sending victim to another school because she was being harassed at current school as result of assault). We conclude that as long as the condition requiring monetary payment shares a nexus with the defendant's crime, as in this case, it is reasonably related to rehabilitation.[5]

Having determined that a charitable donation is authorized by § 53a-30 (a) (12), we next address the issue of whether the trial court acted properly in setting the amount of the required donation. We conclude that the defendant cannot demonstrate that the trial court abused its discretion in imposing the charitable donation that it did.

The condition imposed by the trial court was based upon the recommendation of the office, whose function it was to present, through its presentence investigation report, a thorough picture of the offense at issue and, in particular, the defendant's participation in the offense, his criminal record, social history and present condition, as well as the victim's attitude and her damages, including such costs as her medical expenses and loss of earnings. See Practice Book § 911.[6] The

[5] In the present case the nexus shared by the defendant's crime and the imposed condition of making a donation is clear—the donation is to be made to the hospital where the victim of the crime was treated. In future cases, however, express findings supporting the requisite nexus would alleviate any concerns on the part of a reviewing court.

[6] Practice Book § 911 provides: "[Presentence Investigation and Report; Alternate Incarceration Assessment and Plan]—Scope of Investigation or Assessment

office had suggested that the donation to the hospital be paid "within one year of probation." The office had also recommended that restitution be imposed. The trial court declined to impose restitution and failed to set a specific time period within which the money had to be paid to the hospital. Therefore, the defendant will have five years—the time he will be on probation—within which to satisfy the condition of payment. At the sentencing, the defendant informed the court that his insurance company had paid the policy limits within weeks of the accident and that he believed such payment had been in exchange for a release of all claims. He did not claim that he was financially incapable of paying the donation. Although the trial court never expressly found that he was financially capable of paying the donation, we can assume, based upon its recommendation, that the office, as part of its investigation, had concluded that the defendant was capable of paying the money within one year of probation along with the restitution it

"Whenever an investigation is required or an assessment is ordered or both, the probation officer shall promptly inquire into the attitude of the complainant or the victim, or of the immediate family where possible in cases of homicide, and the criminal record, social history and present condition of the defendant. Such investigation shall include an inquiry into the circumstances of the offense and any damages suffered by the victim, including medical expenses, loss of earnings and property loss. Such assessment shall include an inquiry into the defendant's prior participation in any release programs and the defendant's attitude about participation in an alternate incarceration program. When it is desirable in the opinion of the judicial authority or the investigating authority, such investigation or assessment shall include a physical and mental examination of the defendant.

"If an assessment includes a recommendation for placement in an alternate incarceration program, it shall include, as an attachment, a proposed alternate incarceration plan. A current or updated presentence investigation report may be used in lieu of an alternate incarceration assessment report provided attached thereto is a statement by the investigating authority recommending whether or not the defendant should participate in an alternate incarceration program and any recommendation that the defendant participate includes a proposed alternate incarceration plan."

had also recommended.[7] Therefore, we conclude that the trial court did not abuse its discretion by imposing a charitable donation outside the defendant's financial reach.

We emphasize that although a charitable donation may be a valid term of probation, as in this case, a trial court should not use § 53a-30 (a) (12) as a pretext to impose a fine in excess of the statutory maximum, or to circumvent making the requisite findings for determining restitution pursuant to § 53a-30 (a) (4). In this case, however, the donation equalled only one half of the amount of a fine that the court could have imposed pursuant to § 14-224 (f), and a mere 0.25 percent of the $1,000,000 in medical expenses that the victim had incurred as a result of her injuries caused by the defendant.[8]

Under these circumstances, we conclude that the trial court acted within its discretion in imposing the $2500 charitable donation as a condition of the defendant's probation because it was reasonably related to the defendant's rehabilitation and to the goals of probation.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[7] Indeed, it is well settled that the defendant's probation could not be revoked based upon his nonpayment of the donation unless the trial court first determined that he was able to pay the money and that his nonpayment was wilful. See *Bearden* v. *Georgia*, 461 U.S. 660, 672, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983); *State* v. *Cooley*, 3 Conn. App. 410, 414, 488 A.2d 1283, cert. denied, 196 Conn. 805, 492 A.2d 1240 (1985); see also General Statutes § 53a-32; Practice Book § 928 et seq.

[8] We note that, before imposing the charitable donation, the trial court was not required to find that the hospital had not been fully reimbursed by the victim. Our review of the record indicates that the trial court considered the payment to be symbolic; it was intended not to make the hospital whole, but, rather, to cause the defendant to accept responsibility for his conduct.