# STATE OF CONNECTICUT *v*. ALAN FOWLKES
## (SC 17835)

Borden, Palmer, Vertefeuille, Zarella and Sullivan, Js.*

Argued April 10—officially released September 11, 2007

*The listing of justices reflects their seniority status as of the date of oral argument.

*Suzanne Zitser Curtis*, assistant public defender, for the appellant (defendant).

*Julia K. Conlin*, assistant state's attorney, with whom, on the brief, were *Michael Regan*, state's attorney, and *Michael Kennedy*, assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Alan Fowlkes, pleaded guilty under the *Alford* doctrine[1] to assault in the second degree in violation of General Statutes § 53a-60. The trial court rendered judgment of conviction and sentenced the defendant to a term of five years incarceration, execution suspended after twenty months, and three years of probation. After the defendant began serving his sentence, the state moved to modify the terms of his probation to require him to pay restitution to the victim. The court granted the state's motion, and the defendant appealed, claiming that the trial court lacked jurisdiction to entertain the motion to modify because the defendant already had begun serving his sentence.[2] We disagree and, accordingly, affirm the trial court's decision to grant the motion to modify.

---

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Stevens*, 278 Conn. 1, 3 n.2, 895 A.2d 771 (2006).

[2] The defendant claims in his brief to this court that the state argued, at the hearing on the motion to modify the terms of the defendant's probation, that the plea agreement between the state and the defendant was "void ab initio because the . . . victim's [state] constitutional rights were violated when she [was not] able to present an argument to the court regarding the

The following undisputed facts and procedural history are relevant to the resolution of this appeal. The defendant's conviction arose from an incident of domestic violence that occurred on October 21, 2005. The defendant, who had been romantically involved with the victim for approximately seven years, assaulted the victim, causing her to sustain serious injuries, including the loss of teeth. The defendant was charged with, inter alia, assault in the second degree in connection with this incident. On January 13, 2006, the trial court accepted the defendant's *Alford* plea and rendered judgment thereon. On January 25, 2006, less than two weeks after the court rendered judgment of conviction and the defendant was committed to the custody of the commissioner of correction, the state moved to modify the terms of the defendant's probation to include a condition that he pay restitution to the victim. Specifically, the state argued that, as a result of the assault, the victim incurred medical costs and that, as a condition of the defendant's probation, the defendant should pay those costs as restitution to the victim. The trial court granted the state's motion to modify and ordered the defendant, upon the commencement of his probation, to pay $170 per month to the victim, until he paid a total of $6205. The defendant appealed to the Appellate Court from the trial court's decision to grant the state's motion to modify, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. On appeal, the defendant claims that the court lacked subject matter jurisdiction to order restitution because the defendant already had started serving his sentence. The state argues, inter alia, that the court had subject matter jurisdiction because restitution is not punitive in nature. We agree with the state.

issue of restitution." (Internal quotation marks omitted.) As no such claim is before us on appeal, we do not consider the issue.

We begin our analysis with the applicable standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Alexander*, 269 Conn. 107, 112, 847 A.2d 970 (2004).

The defendant contends that the trial court had no authority to order restitution because its order was not made in accordance with General Statutes § 53a-30.[3] Specifically, the defendant claims that § 53a-30 authorizes a trial court to issue an order of probation, which includes restitution, only at the time that it imposes the original sentence of incarceration or during the period of probation. The defendant further claims that after sentencing, but before the beginning of any period of probation, only the court support services division may

---

[3] General Statutes § 53a-30 provides in relevant part: "(a) When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant: (1) Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip the defendant for suitable employment . . . (4) make restitution of the fruits of the defendant's offense or make restitution, in an amount the defendant can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance . . . (7) refrain from violating any criminal law of the United States, this state or any other state . . . or (17) satisfy any other conditions reasonably related to the defendant's rehabilitation. . . .

"(b) When a defendant has been sentenced to a period of probation, the Court Support Services Division may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) of this section which are not inconsistent with any condition actually imposed by the court.

"(c) At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. . . ."

Although § 53a-30 was amended in 2006; see Public Acts 2006, No. 06-187, § 29; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53a-30.

modify or change the conditions of probation pursuant to § 53a-30 (b). We disagree.

The defendant claims that the trial court lacked subject matter jurisdiction after it imposed the defendant's sentence because that jurisdiction terminated once the defendant began serving his sentence. "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) Id., 112–13.

Although the trial court is a constitutional court of general jurisdiction; State v. Reid, 277 Conn. 764, 774, 894 A.2d 963 (2006); "the jurisdiction of [a] sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action *affecting a defendant's sentence* unless it expressly has been authorized to act." (Emphasis in original; internal quotation marks omitted.) State v. Alexander, supra, 269 Conn. 113. The defendant claims that the restitution order in the present case affected the defendant's sentence because General Statutes § 53a-30 (a) provides that conditions of probation, including restitution, are defined as "condition[s] of the sentence . . . ." The correct analysis, however, does not turn on whether restitution is a "condition of the sentence" but, rather, whether it "affect[s] [the] sentence . . . ." (Internal quotation marks omitted.) State v. Alexander, supra, 119. In order to make such a determination, we

must ascertain whether the trial court's action was punitive in nature. Id., 118–19. If it is not punitive in nature, then a defendant's sentence is not affected, and the trial court has jurisdiction to take that action. If it is punitive, then a defendant's sentence *is* affected, and the trial court lacks jurisdiction to take that action. See *State* v. *Waterman*, 264 Conn. 484, 497, 825 A.2d 63 (2003). We conclude that the restitution order in the present case was not punitive in nature and, therefore, did not affect the defendant's sentence.

In *State* v. *Waterman*, supra, 264 Conn. 497–98, we determined that a trial court had jurisdiction to make factual findings and advise a criminal defendant of certain statutory requirements in connection with his conviction after he already had begun serving his sentence. In *Waterman*, the sentencing court held a hearing approximately one month after the defendant, Steven Waterman, was convicted of one count of public indecency, in order to make factual findings and to advise Waterman of the mandatory sex offender registration requirements of General Statutes (Rev. to 2003) § 54-251.[4] Id., 485–87. Waterman claimed that the registration requirements were punitive and "constitut[ed] a substantive change in the judgment, and that, in the absence of an express legislative grant of continuing jurisdiction, once he had begun serving his sentence, the court no longer could make the factual finding that subjected him to the sex offender registration requirements [of] § 54-251." (Internal quotation marks omitted.) Id., 489. The state argued that Waterman's "sentence was not affected by the trial court's determination that he must comply with [the registration requirements of § 54-251]." Id.

The dispositive issue in *Waterman* was whether the registration requirements of § 54-251 were punitive and

---

[4] Hereinafter, all references to § 54-251 are to the revision of 2003.

thus affected the defendant's sentence. See id., 492. In *Waterman,* we used the two part test that we had adopted in *State* v. *Kelly,* 256 Conn. 23, 92, 770 A.2d 908 (2001), to determine whether the registration requirements of § 54-251 were punitive. "[U]nder the first part of the test, the court examine[s] whether the legislature ha[s] intended the statute [under consideration] to be criminal or civil, in other words, 'punitive in law.' . . . Under the second part of the test, the . . . court consider[s] whether, even if not punitive in law, the statute [is] nevertheless 'punitive in fact,' that is, whether the statute [is] so punitive in fact that it [can] not be seen as civil in nature." (Citation omitted.) *State* v. *Waterman,* supra, 264 Conn. 492–93. Applying this test, we held that the registration requirements of § 54-251 were not punitive. See id., 493, 497. We determined that, "[b]ecause [the] regulatory requirements [of the statute were] ministerial, the trial court did not have to revisit the sentence in order to inform the defendant of his obligations. Indeed, making the factual finding and informing the defendant of [the] requirements . . . did not necessitate any modification, opening or correction of the sentence. In short, [Waterman's] sentence was not affected by the trial court's factual finding and advisement that he must comply with the statute. Rather, the court merely was effectuating the regulatory purpose of [the statute]." Id., 497.

In *State* v. *Alexander,* supra, 269 Conn. 107, we applied the same analysis when the trial court in that case issued a restraining order pursuant to General Statutes (Rev. to 2001) § 53a-40e,[5] after the defendant,

[5] General Statutes (Rev. to 2001) § 53a-40e provides in relevant part: "(a) If any person is convicted of a violation of section 53a-59, 53a-59a, 53a-60, 53a-60a, 53a-60b, 53a-60c, 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a, 53a-72b, 53a-181c, 53a-181d, 53a-181e, or of attempt or conspiracy to violate any of said sections or section 53a-54a, against a family or household member as defined in subdivision (2) of section 46b-38a, the court may, in addition to imposing the sentence authorized for the crime under section 53a-35a, if the court is of the opinion that the history and character and the nature

Robert Alexander, began serving his sentence. After Alexander began serving his sentence for unlawful restraint in the first degree and assault in the first and third degree, the state requested that the trial court issue a restraining order to protect one of Alexander's victims. Id., 109, 111. Alexander argued that the trial court lacked jurisdiction to issue such an order because Alexander already had begun serving his sentence. Id., 111. The trial court determined that the restraining order was not punitive in nature because it was issued strictly for the purpose of protecting the victim. Id. In reviewing the trial court's determination, we applied the two part test that we used in *Waterman*. See id., 115–19. We first examined § 53a-40e to determine whether the statute was punitive as a matter of law. Id., 115. Concluding that the statute was not punitive but, rather, prophylactic in nature, we then determined that the restraining order itself was not punitive in fact. Id., 118–19. We therefore concluded that the trial court had jurisdiction to issue the restraining order. Id., 119.

Although neither *Waterman* nor *Alexander* dealt specifically with an order affecting the conditions of probation,[6] the test that we applied in those cases is equally

and circumstances of the criminal conduct of such offender indicate that a standing criminal restraining order will best serve the interest of the victim and the public, issue a standing criminal restraining order which shall remain in effect until modified or revoked by the court for good cause shown.

"(b) Such standing criminal restraining order may include but is not limited to enjoining the offender from (1) imposing any restraint upon the person or liberty of the victim; (2) threatening, harassing, assaulting, molesting, sexually assaulting or attacking the victim; or (3) entering the family dwelling or the dwelling of the victim. . . ."

Hereinafter, all references to § 53a-40e are to the revision of 2001.

[6] We do note, however, that a trial court could make the requirement that a defendant register as a sex offender pursuant to § 54-251 or the issuance of a restraining order pursuant to § 53a-40e a condition of the defendant's probation pursuant to General Statutes § 53a-30 (a) (17), which allows a trial court to order a defendant to "satisfy any other conditions reasonably related to the defendant's rehabilitation."

applicable to the imposition of an additional condition of probation after the defendant has begun serving his sentence of imprisonment. Applying that test in the present case, we conclude that the trial court's imposition of restitution as an additional condition of probation was not punitive in nature.

We begin by restating the general principle that restitution is a condition of probation that a trial court may order pursuant to § 53a-30. The purpose of probation, as an alternative to incarceration, is to reform the defendant and to preserve public safety. E.g., *State* v. *Pieger*, 240 Conn. 639, 647, 692 A.2d 1273 (1997); see also *State* v. *Misiorski*, 250 Conn. 280, 288, 738 A.2d 595 (1999) (conditions of probation are generally meant to "assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large" [internal quotation marks omitted]). Furthermore, we long have held that probation "is not ordered for the purpose of punishment for the wrong for which there has been a conviction, or for general wrongdoing. *Its aim is reformatory and not punitive.* It is to bring one who has fallen into evil ways under oversight and influences which may lead him to a better living. The end sought is the good of the individual wrongdoer, and not his punishment. Underlying the act of commitment is the hope that it may prove that punishment will be unnecessary, and that its stigma may be avoided. A sentence partakes of an essentially different character. It is the judgment of the court formally pronounced awarding the punishment to be inflicted. . . . It deals out punishment, and one of its underlying aims is to cause its subject to suffer for the wrong he has done." (Citation omitted; emphasis added; internal quotation marks omitted.) *Belden* v. *Hugo*, 88 Conn. 500, 504, 91 A. 369 (1914). In short, probation is not punitive. Accordingly, because the legislature enumerated restitution as a possible con-

dition of a criminal defendant's probation, it defies logic to conclude that restitution is punitive as a matter of law.

Next, we turn to the issue of whether the condition of restitution that the trial court ordered was punitive in fact. In *Alexander*, we concluded that the issuance of a restraining order pursuant to § 53a-40e was not punitive in fact. *State* v. *Alexander*, supra, 269 Conn. 119. We noted that the proper inquiry necessarily involved the consideration of various factors, including "[w]hether the [order] involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . ." (Internal quotation marks omitted.) Id., 118.

Using this approach, we note that restitution historically has not been regarded as punishment because it does not promote the traditional aims of punishment, namely, retribution and deterrence. Restitution simply serves the state's rehabilitative interest in having a defendant take responsibility for his conduct through the act of making the victim whole. See, e.g., *State* v. *Pieger*, supra, 240 Conn. 648–49 (trial court acted within its discretion in requiring defendant to make charitable donation "as a condition of probation in an attempt to foster the defendant's reformation"). Furthermore, the restitution that the trial court ordered in the present case was not excessive. The state requested restitution in the amount of $6205 so that the victim could pay the medical expenses that she had incurred as a result of the defendant's assault. Although the defendant objected to

the restitution order generally, he did not object to the *amount* of restitution. In fact, the record is devoid of any evidence to indicate that the restitution ordered in the present case was excessive.

Finally, the legislature has recognized that the purpose of probation is rehabilitative in nature. See General Statutes § 53a-30 (a) (17) (court may order defendant to "satisfy any *other* conditions reasonably related to the defendant's rehabilitation" [emphasis added]). The language of § 53a-30 (a) (17) suggests that the previous sixteen categories of probation conditions enumerated in § 53a-30 (a) are also rehabilitative in nature. Therefore, in consideration of the factors that we outlined previously, we conclude that the restitution ordered in the present case was not punitive in fact. Therefore, the trial court's order of restitution did not affect the defendant's sentence.

The defendant also contends that, even if the order did not affect his sentence, § 53a-30 deprives the trial court of jurisdiction to impose a condition of probation subsequent to the initial sentencing and prior to the defendant's commencement of his period of probation. We disagree.

The defendant's claim implicates a question of statutory interpretation. "When interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 273, 901 A.2d 1176 (2006). "To do so, we first consult the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

(Internal quotation marks omitted.) Id., quoting General Statutes § 1-2z.

We begin our analysis by reviewing the statutory provision in question. General Statutes § 53a-30 (a) provides in relevant part that, "[w]hen imposing [a] sentence of probation . . . the court may, as a condition of the sentence, order that the defendant . . . (4) make restitution of the fruits of the defendant's offense or make restitution, in an amount the defendant can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance . . . ." This statute is not jurisdictional in nature. "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and [to] determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 336, 857 A.2d 348 (2004), quoting *Fusco* v. *Fusco*, 266 Conn. 649, 652, 835 A.2d 6 (2003). The defendant claims that the phrase, "[w]hen imposing sentence," in § 53a-30 (a) implicates the subject matter jurisdiction of the trial court because it allows that court to order a condition of probation only when imposing its initial sentence on the defendant. The defendant, relying on § 53a-30 (c),[7] claims that, once the trial court imposes sentence, it has no authority to impose a condition of probation until the defendant commences his period of probation. Section 53a-30 (a), however, contains no such limitation. General Statutes § 53a-30 (a) begins with "[w]hen imposing [a] sentence of probation" and proceeds to list the various conditions of probation that a court may impose. It contains no language restricting the time in

[7] See footnote 3 of this opinion.

which a court may impose the condition of probation. Indeed, the only restriction that § 53a-30 (a) places on the court is the range of conditions that it can impose, namely, those enumerated in the statute. In short, the statute does not implicate the power of the trial court to impose a condition of probation but merely sets forth the conditions of probation that may be imposed.

Our analysis of § 53a-30 is consistent with the text of another provision of the statutory scheme. General Statutes § 53a-28 (d) provides that "[a] sentence to a period of probation or conditional discharge in accordance with sections 53a-29 to 53a-34, inclusive, shall be deemed a *revocable disposition*, in that such sentence *shall be tentative* to the extent that it may be *altered or revoked* in accordance with said sections but for all other purposes it shall be deemed to be a final judgment of conviction." (Emphasis added.) Thus, the term of probation or conditional discharge, unlike the sentence of a term of imprisonment, does not become final when imposed. If a sentence of probation is "revocable" and "tentative," and can be "altered or revoked" without any temporal restriction in the statute itself, then it is difficult to see how a court lacks subject matter jurisdiction to modify the conditions of probation after the imposition of sentence.

Finally, the defendant's interpretation of the statute leads to a highly improbable scenario, namely, that the trial court possesses jurisdiction to order a condition of probation at sentencing, loses jurisdiction while the defendant is serving his term of incarceration and regains it once the defendant commences his period of probation. According to the defendant, however, during the defendant's incarceration, the court support services division of the judicial branch may impose additional conditions of probation pursuant to § 53a-30 (b).[8]

---

[8] See footnote 3 of this opinion.

In view of the fact that the court support services division is a part of the judicial branch; see General Statutes § 51-1d;[9] it is a strained interpretation of the statute to suggest that, during the period of incarceration, the division, but not the court, has the ability to modify the conditions of probation.

The decision to grant the state's motion to modify the conditions of the defendant's probation is affirmed.

In this opinion the other justices concurred.

---

[9] General Statutes § 51-1d provides: "There is established a Court Support Services Division within the judicial branch consisting of the Office of Adult Probation, the Office of Alternative Sanctions, the Office of the Bail Commission, the Family Division and the Juvenile Detention Services Division. Notwithstanding any provision of the general statutes, the duties of the various offices, divisions and personnel which comprise the Court Support Services Division are transferred to the Court Support Services Division, and the Office of Adult Probation, Office of Alternative Sanctions, Office of the Bail Commission, Family Division and Juvenile Detention Services Division are dissolved. The judicial branch shall establish such job titles and assign the units and functions formerly assigned to the offices, divisions and personnel which comprise the Court Support Services Division in order to efficiently and effectively carry out the duties of the Court Support Services Division."