# STATE OF CONNECTICUT *v.* SILAS S.*
## (AC 30034)

Bishop, Harper and Foti, Js.

Argued September 2—officially released December 1, 2009

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Christopher Y. Duby*, special public defender, for the appellant (defendant).

*Kevin T. Kane*, chief state's attorney, with whom were *Tatiana A. Messina*, deputy assistant state's attorney, and, on the brief, *Jonathan C. Benedict*, state's attorney, and *Eileen F. McCarthy*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Silas S., appeals from the judgment of the trial court adjudicating him to be a youthful offender in violation of General Statutes § 54-76b for having committed the crime of criminal trespass in the second degree in violation of General Statutes § 53a-108 (a) (1). Specifically, he claims that the court improperly ordered him to pay restitution to the victims, the owners of the property on which he trespassed.[1] We agree with the defendant and reverse in part the judgment of the trial court and remand the case for resentencing.

In 2008, the state filed an information charging the defendant as a youthful offender for having committed

---

[1] Embedded in his analysis of this claim is an assertion by the defendant that the state failed to prove that he acted with the mental state necessary for the commission of the crime of criminal trespass in the second degree. The defendant did not list this issue in his statement of the issues raised in his brief and has done little more than mention the issue in passing in his analysis of the sole claim raised on appeal. This treatment of the issue does not satisfy the requirements of a properly briefed claim. See Practice Book §§ 67-1 and 67-4. Therefore, to the extent that the defendant attempted to raise a separate and distinct claim in this regard, we decline to afford it review.

the crime of criminal trespass in the second degree.
Following a trial before the court, the court, in an oral
decision, found that on February 3, 2007, the defendant
entered and remained unlawfully in an unoccupied
house in Fairfield, which was being readied for sale by
its owners. The court found that despite the defendant's
testimony that he did not know that the house was
unoccupied, he knew that he was neither licensed nor
privileged to enter and to remain on the property. The
court adjudicated the defendant a youthful offender
for committing the crime of criminal trespass in the
second degree.

Immediately after the court rendered its decision, the
prosecutor represented that the state had an interest
in seeking restitution for the victims' damages. During
the trial, the state presented evidence that the defendant
and approximately twenty-one other persons, all of
whom were in their teens, entered the unoccupied
house at issue to attend a party that was held at the
property without the knowledge or consent of its own-
ers. One of the owners of the house, Jeffrey Rutkowski,
testified that upon inspecting it two days after the party,
he discovered that the house was littered with trash,
including beer cans, and that it had sustained extensive,
intentional property damage caused by the partygoers.
He testified that the cost to repair the damage exceeded
$36,000. The court agreed to delay sentencing for the
purpose of permitting the office of adult probation to
complete a restitution investigation. At the sentencing
hearing, the prosecutor represented that, after receiving
restitution from other individuals who were present
at the victims' house, the victims still had not been
reimbursed for all of the damages caused at the party
on February 3, 2007. Accordingly, the state requested
that an order of restitution be made part of the defen-
dant's sentence. In response, the defendant's attorney

argued that there was no evidence adduced at trial that the defendant had caused any of the victims' damages.

In rendering its sentence, the court admonished the defendant for attending the party at the victims' house. The court stated that the defendant had stood by, and had done nothing, while the victims' property was damaged by others. The court also stated that eighteen other individuals who were present at the party had "paid their fair share" by making a restitution payment to the victims. The court stated: "[Y]ou are responsible for being there just as much as any of the other participants that were there, whether or not you picked up a marker and did the graffiti or whether or not you kicked out the parts of the staircase."[2] Thereafter, the court sentenced the defendant to a term of incarceration of ninety days, execution suspended, and a period of probation of two years. Among several special conditions of probation the court ordered was that the defendant make restitution to the victims in the amount of $2000.

The defendant claims that the court's order to pay restitution was improper because there was no evidence, nor any finding by the court, that he had caused any damage at the house. The state argues that the court's restitution order was reasonably related to the defendant's rehabilitation and fell within the court's wide latitude in fashioning an appropriate sentence in this case.

The court's authority in sentencing a youthful offender is codified in General Statutes § 54-76j. The following provisions of that statute are relevant to the present appeal. "The court, upon the adjudication of any person as a youthful offender, may: (1) Commit the defendant; (2) impose a fine not exceeding one

---

[2] At trial, the state had elicited evidence that one or more partygoers had caused extensive damage to an interior staircase of the house and had written on one or more interior walls of the house with a marker.

thousand dollars; (3) impose a sentence of conditional discharge or a sentence of unconditional discharge; (4) impose a sentence of community service; (5) impose a sentence to a term of imprisonment not greater than that authorized by the crime committed by the defendant, but in no event shall any such term exceed four years; (6) impose sentence and suspend the execution of the sentence, entirely or after a period set by the court; (7) order treatment pursuant to section § 17a-699; or (8) if a criminal docket for drug-dependent persons has been established pursuant to section 51-181b in the judicial district in which the defendant was adjudicated a youthful offender, transfer the supervision of the defendant to the court handling such docket." General Statutes § 54-76j (a). "If execution of the sentence is suspended under subdivision (6) of subsection (a) of this section, the defendant may be placed on probation or conditional discharge for a period not to exceed three years, provided, at any time during the period of probation, after hearing and good cause shown, the court may extend the period as deemed appropriate by the court. . . ." General Statutes § 54-76j (b).

In the present case, the court imposed a sentence of a term of imprisonment and suspended the execution of that sentence in accordance with § 54-76j (a) (6). The court placed the defendant on probation for a period of two years in accordance with § 54-76j (b).[3] In imposing the sentence of probation, the court placed several conditions on the defendant. The only condition at issue in this appeal is that the defendant pay restitution to the victims in the amount of $2000. General Statutes § 53a-30 codifies the court's authority in imposing a sentence of probation and conditional discharge. That

[3] The defendant has not challenged on appeal the court's judgment of guilty of being a youthful offender or the suspended sentence and the sentence of probation.

provision illustrates sixteen conditions of probation that a court may impose on a defendant. General Statutes § 53a-30 (a) (1) through (16). General Statutes § 53a-30 (a) provides in relevant part: "When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant . . . (4) make restitution of the fruits of the defendant's offense or make restitution, in an amount the defendant can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance . . . ." Additionally, § 53a-30 (a) (17) grants the court broad authority to require that a defendant "satisfy any other conditions reasonably related to the defendant's rehabilitation. . . ." General Statutes § 53a-30 (a) (17).

Thus, § 53a-30 (a) (4) specifically authorizes a court to require a defendant to pay restitution to his victim or victims. In reviewing the court's order, we are mindful that "[t]he success of probation as a correctional tool is in large part tied to the flexibility within which it is permitted to operate. . . . To ensure this success, the trial judge has an exceptional degree of flexibility in determining whether to grant . . . probation and on what terms." (Citations omitted; internal quotation marks omitted.) *State* v. *Pieger*, 240 Conn. 639, 648, 692 A.2d 1273 (1997); see also *State* v. *Faraday*, 268 Conn. 174, 180, 842 A.2d 567 (2004). "The purpose of probation, as an alternative to incarceration, is to reform the defendant and to preserve public safety. . . . Furthermore, we have long held that probation is not ordered for the purpose of punishment for the wrong for which there has been a conviction, or for general wrongdoing. *Its aim is reformatory and not punitive.* It is to bring one who has fallen into evil ways under oversight and influences which may lead him to a better living. The end sought is the good of the individual wrongdoer, and

not his punishment. . . . [P]robation is not punitive. Accordingly, because the legislature enumerated restitution as a possible condition of a criminal defendant's probation, it defies logic to conclude that restitution is punitive as a matter of law." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 743–44, 930 A.2d 644 (2007).

Consistent with these principles, our Supreme Court also has emphasized that restitution properly is related to the damage or loss actually occasioned by the criminal activity that the defendant has committed: "[R]estitution historically has not been regarded as punishment because it does not promote the traditional aims of punishment, namely, retribution and deterrence. Restitution simply serves the state's rehabilitative interest in having a defendant take responsibility for his conduct *through the act of making the victim whole.*" (Emphasis added.) Id., 744. Likewise, as set forth previously, § 53a-30 (a) (4) describes a court's authority to order restitution in an amount commensurate with "the fruits of the defendant's offense" or "for the loss or damage caused thereby . . . ." General Statutes § 53a-30 (a) (4).

The court unambiguously stated that the defendant was to pay $2000 in *restitution* to the victims. The court did not state that this payment was for any *other* rehabilitative purpose. The court also did not exercise its authority, pursuant to § 54-76j (a) (2), to impose a fine not exceeding $1000 on the defendant. Beyond ordering the defendant to pay restitution, however, the court did not find that he caused any damage to the victims or that he profited from his criminal activity. The court found that the defendant had committed the crime of criminal trespass in the second degree for his conduct in entering and remaining in the victims' home on February 3, 2007; the defendant was not convicted of any crime requiring proof that he caused property damage or loss to the victims. Additionally, the state

did not present any evidence, whether testimonial or physical in nature, to support a finding that the defendant caused any damage to the victims or that there were any fruits of his criminal activity that reasonably could be measured in monetary terms.

Our careful review of the evidence reveals that, in its case-in-chief, the state presented testimony from Kevin McKeon, the Fairfield police detective who investigated the incident. McKeon testified that of all of the persons who were at the party at the victims' house, his investigation led him to the firm conclusion that only two individuals caused property damage to the house. Additionally, McKeon testified that he did not have any information that the defendant caused any property damage. The state presented testimony from one of the owners of the house, Jeffrey Rutkowski. Rutkowski testified concerning the nature and the extent of the damage caused throughout the house, but did not testify that the defendant, as opposed to any other partygoer, caused any damage. The state also presented the testimony of two individuals who attended the party at the home on February 3, 2007, Christopher I. and Samantha Z. Both of these witnesses testified that they knew the defendant prior to the party and observed the defendant during the party. Christopher I. testified that he did not observe the defendant cause any damage to the house. Samantha Z. testified that she did not see the defendant doing "anything inappropriately" during the party and that she did not see him cause any damage to the house.

During his trial testimony, the defendant testified that he was present at the victims' house on February 3, 2007, for approximately two hours. Also, he testified that he had heard other partygoers making noise and had observed other partygoers causing damage to the house. The defendant testified that these observations in part prompted him to leave the party.

In light of the court's findings and our examination of the evidence, we conclude that there was no basis for the court's order to pay $2000 in restitution to the victims. The court did not state that there was any other rehabilitative purpose for this requirement, and we are unaware that any such purpose exists. Absent any evidence that the defendant profited at the expense of the victims or that he caused any measurable loss to the victims, we fail to see how any payment to the victims could have a legitimate rehabilitative effect on the defendant.[4] Cf. *State* v. *Fowlkes*, supra, 283 Conn. 744–45 (court properly ordered defendant to pay restitution of medical expenses incurred by victim of defendant's assault); *State* v. *Cyr*, 57 Conn. App. 743, 748, 751 A.2d 420 (requirement that defendant undergo sexual offender treatment deemed important component of his rehabilitation), cert. denied, 254 Conn. 905, 755 A.2d 883 (2000). The requirement that the defendant pay $2000 to the victims cannot properly be deemed restitution related to his offense. Absent any proper rehabilitative purpose for the requirement, we are left to conclude

---

[4] The state acknowledges that § 53a-30 (a) (4) applies to our analysis but also asserts that § 53a-30 (a) (17) applies and that in accordance with that provision, we should examine the restitution condition at issue to determine if it is reasonably related to the defendant's rehabilitation. In interpreting § 53a-30 (a) (17), formerly § 53a-30 (a) (12), our Supreme Court has stated that its terms are "very broad." (Internal quotation marks omitted.) *State* v. *Misiorski*, 250 Conn. 280, 287, 738 A.2d 595 (1999). "By allowing the trial court to impose '*any other* conditions reasonably related to [the defendant's] rehabilitation' . . . the legislature authorized the court to impose any condition that would help to secure the defendant's reformation. This broad power is consistent with the goals of probation. . . . Additionally, because probation is, first and foremost, a penal alternative to incarceration—its objectives are to foster the offender's reformation and to preserve the public's safety—a sentencing court must have the discretion to fashion those conditions of probation it deems necessary to ensure that the individual successfully completes the terms of probation." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id. Because we conclude that the requirement at issue is not reasonably related to the defendant's rehabilitation, we conclude that the order to pay restitution is not authorized by § 53a-30 (a) (17).

that it serves either to deter or to punish the defendant for his wrongdoing. Accordingly, we conclude that the order does not constitute fair restitution to the victims and does not further the defendant's rehabilitation. For these reasons, it is not authorized by § 53a-30. The order to pay restitution must be set aside as an abuse of the court's discretion.[5]

The judgment is reversed only as to the sentence imposed and the case is remanded with direction to vacate the special condition of probation that the defendant make restitution to the victims in the amount of $2000 and for resentencing. The judgment is affirmed in all other respects.

In this opinion BISHOP, J., concurred.

FOTI, J., concurring in part and dissenting in part. I disagree with the majority's conclusion that the order to pay restitution must be set aside as an abuse of the trial court's discretion. Accordingly, I respectfully dissent from the portion of the majority opinion concerning the court's order of restitution.[1] I generally

---

[5] The dissent reasons that the extensive damage to the interior walls and a staircase within the victims' house "undeniably were the outcome, consequence, result or end product of [the defendant's] criminal trespass." Accordingly, the dissent concludes that these damages suffered by the victims were the fruits of the defendant's offense, for which the court properly ordered the payment of restitution. Respectfully, we disagree with this conclusion and, on the basis of the record before us, conclude that the fruit of the defendant's offense, criminal trespass in the second degree, consisted merely of his unlawful presence in the victims' house on February 3, 2007. Nothing in the record suggests that the defendant's presence in the house was causally related to the extensive damages for which the court awarded a payment of restitution to the victims. Presumably, if any evidence supported a finding that the defendant had caused the damage at issue, the state would have charged the defendant with an offense related to his conduct in this regard, such as criminal mischief.

[1] I join the majority in declining to review as inadequately briefed any separate and distinct claim regarding the assertion that the state failed to prove that the defendant acted with the mental state necessary for the commission of the crime of criminal trespass in the second degree.

agree with the facts set forth in the majority opinion and will not repeat them in this opinion. I, however, disagree with the majority's conclusion that the requirement that the defendant, Silas S., pay $2000 to the victims cannot properly be deemed restitution related to his offense and, therefore, that this court is "left to conclude that it serves either to deter or to punish the defendant for his wrongdoing." I conclude that the order does constitute fair restitution to the victims, furthering the defendant's rehabilitation and, therefore, is authorized by General Statutes § 53a-30. The order to pay restitution should not be set aside as an abuse of the court's discretion.

I begin by underscoring that "[t]he success of probation as a correctional tool is in large part tied to the flexibility within which it is permitted to operate. . . . To ensure this success, the trial judge has an exceptional degree of flexibility in determining whether to grant . . . probation and on what terms." (Citations omitted; internal quotation marks omitted.) *State* v. *Pieger*, 240 Conn. 639, 648, 692 A.2d 1273 (1997); see also *State* v. *Faraday*, 268 Conn. 174, 180, 842 A.2d 567 (2004). "The purpose of probation, as an alternative to incarceration, is to reform the defendant and to preserve public safety. . . . Furthermore, we have long held that probation is not ordered for the purpose of punishment for the wrong for which there has been a conviction, or for general wrongdoing. *Its aim is reformatory and not punitive.* It is to bring one who has fallen into evil ways under oversight and influences which may lead him to a better living. The end sought is the good of the individual wrongdoer, and not his punishment. . . . [P]robation is not punitive. Accordingly, because the legislature enumerated restitution as a possible condition of a criminal defendant's probation, it defies logic to conclude that restitution is punitive as a matter of law." (Citations omitted; emphasis

in original; internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 743–44, 930 A.2d 644 (2007). Also, § 53a-30 (a) provides in relevant part: "When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant . . . (4) make restitution of the fruits of the defendant's offense or make restitution, in an amount the defendant can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance . . . ." General Statutes § 53a-30 (a) (4).

I agree with the majority generally that "[c]onsistent with these principles, our Supreme Court also has emphasized that restitution properly is related to the damage or loss actually occasioned by the criminal activity that the defendant has committed." I, however, believe that the majority is misguided in ascribing to the court's ruling an overly narrow view of "a [trial] court's authority to order restitution in an amount commensurate with 'the fruits of the defendant's offense' or 'for the loss or damage caused thereby . . . .' "

In *State* v. *Doriss*, 84 Conn. App. 542, 854 A.2d 48, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004), this court had an opportunity to interpret the meaning of the term "fruits" as used in § 53a-30 (a) (4). The court first noted that the statute does not define "fruits," and, therefore, in the absence of such statutory guidance, it could appropriately look to the meaning of the word as commonly expressed in the law and in dictionaries. Id., 549, quoting *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 178, 713 A.2d 1269 (1998). The court then stated that " '[f]ruit' can be defined as '*the outcome, consequence or result of some action*.' The Standard Encyclopedic Dictionary (1966). This common use of the term is often so employed to describe the *product or end product* of

some action or omission. Significantly, Roget's International Thesaurus (4th Ed. 1977) lists 'fruit' as a synonym for 'product.' " (Emphasis added.) *State* v. *Doriss*, supra, 549. Under this definition, it is clear that the extensive damages sustained to an interior staircase and one or more interior walls were indeed the fruits of the defendant's offense, as they undeniably were the outcome, consequence, result or end product of his criminal trespass.

Because I conclude that the damages to the house were the fruits of his criminal activity, I therefore conclude that the requirement that the defendant pay $2000 to the victims was restitution related to his offense. As a result, the order to pay restitution was not an abuse of the court's discretion.[2] Therefore, I dissent from that portion of the majority opinion concerning the court-ordered restitution. I would affirm the judgment of the trial court. In all other respects, I concur.

---

[2] Also, because I conclude that the requirement at issue is reasonably related to the defendant's rehabilitation and, therefore, authorized by § 53a-30 (a) (4), I need not reach the issue of whether the order to pay restitution was authorized by § 53a-30 (a) (17).